DA 10-0569

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 239

ROBERT DARON RIGGS,

      Petitioner and Appellant,

  v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 06-411C
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Monica J. Tranel, Jack H. Morris; Tranel, McCarter & Morris,
Attorneys at Law, Helena, Montana

      For Appellee:

            Steve Bullock, Montana Attorney General; Sheri K. Sprigg, Assistant
Attorney General, Helena, Montana

            Marty Lambert, Gallatin County Attorney; Ashley J. Whipple, Deputy
County Attorney, Bozeman, Montana

                           Submitted on Briefs: July 27, 2011
                                  Decided: September 27, 2011

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Robert Daron Riggs ("Riggs") appeals the denial of his amended petition for postconviction relief by the Eighteenth Judicial District Court, Gallatin County. We affirm.

¶2 The facts surrounding the underlying charges are detailed in *State v. Riggs*, 2005 MT 124, 327 Mont. 196, 113 P.3d 281, and we will not fully recite them here. Riggs was convicted by a jury of incest, sexual intercourse without consent, and two counts of sexual assault, all felonies, involving the sexual abuse of four young girls – D.M., D.C. (one of Riggs' step-daughters), S.M., and M.J. Riggs was sentenced to 24 years in the Montana State Prison, followed by a suspended sentence of 25 years. This Court affirmed his conviction. *Riggs*, ¶ 1.

¶3 Riggs, acting pro se, filed his first petition for postconviction relief on July 26, 2006. The District Court initially denied Riggs' petition. Riggs obtained counsel and was allowed to file an amended petition for postconviction relief ("Petition"). The Petition alleged approximately 80 claims of ineffective assistance of Riggs' trial counsel, Herman "Chuck" Watson III ("Watson"). The State responded. The District Court partially denied Riggs' Petition, finding that many of Riggs' claims were procedurally barred, did not satisfy the pleading requirements, did not pass substantive review, or were withdrawn.

¶4 An evidentiary hearing was held on the 12 remaining claims in Riggs' Petition on October 22-23, 2009. Both parties submitted evidence and witness testimony. On September 29, 2010, the District Court issued extensive Findings of Fact, Conclusions of Law, and Order denying Riggs' remaining 12 claims. Riggs appeals. We will discuss the facts of each claim separately below.

2

## STANDARD OF REVIEW

¶5 We review claims of ineffective assistance of counsel de novo. *State v. Gunderson*, 2010 MT 166, ¶ 66, 357 Mont. 142, 237 P.3d 74; *State v. Green*, 2009 MT 114, ¶ 14, 350 Mont. 141, 205 P.3d 798.

## DISCUSSION

¶6 Riggs' ineffective assistance of counsel claims can be grouped into two general areas – pretrial and trial. He alleges that Watson "did no pretrial work," specifically that Watson failed to: (1) file motions; (2) interview witnesses; (3) object to the Information being amended; (4) prepare his witnesses to testify; and (5) object to the late disclosure of the State's rebuttal expert. Riggs also alleges that during trial, Watson failed to: (1) properly conduct voir dire and challenge jurors; (2) object to the admission of the victims'/witnesses' prior consistent statements; and (3) object to the admission of Riggs' statements. Riggs argues these errors alone, or cumulatively, warrant the reversal of his conviction and a new trial.

¶7 We note that Riggs' appeal focuses exclusively on the issues stated above in ¶ 6, and does not address all the 80-plus claims alleged in his Petition and subsequently dismissed by the District Court. Our consideration of Riggs' appeal is confined to the issues presented. *See In re B.P.*, 2001 MT 219, ¶ 41, 306 Mont. 430, 35 P.3d 291 (we will not formulate arguments for a party on appeal).

¶8 The State argues that while Riggs' expert (in his postconviction proceedings), William Boggs ("Boggs"), would have conducted his defense much differently, Watson's performance falls within the wide range of professionally competent assistance. The State

3

asserts that Riggs has not shown the errors, if any, were so serious as to deprive him of a fair trial.

¶9 When reviewing ineffective assistance of counsel claims, we employ the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *State v. Savage*, 2011 MT 23, ¶ 22, 359 Mont. 207, 248 P.3d 308. In order for a criminal defendant to prevail on an ineffective assistance of counsel claim, he or she must demonstrate both (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687; *Savage*, ¶ 22; *Gunderson*, ¶ 67. If the defendant makes an insufficient showing regarding one prong, the other need not be addressed. *Gunderson*, ¶ 68.

¶10 To establish deficient performance, the defendant must show that, considering all the circumstances, counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Whitlow v. State*, 2008 MT 140, ¶¶ 14, 20, 343 Mont. 90, 183 P.3d 861. In making this determination, we keep in mind that counsel's function is to make the adversarial process work in a particular case. *Strickland*, 466 U.S. at 690. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Gunderson*, ¶ 69. In scrutinizing counsel's performance, we must make every effort to eliminate the distorting effects of hindsight. *Whitlow*, ¶ 15. That another attorney would have handled the case differently does not mean counsel was ineffective. *Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not

4

defend a particular client in the same way."). We "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct." *Whitlow*, ¶ 16; *Strickland*, 466 U.S. at 690. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. *Whitlow*, ¶ 32.

¶11 A claim of ineffective assistance of counsel will not succeed when predicated upon counsel's failure to make motions or objections which, under the circumstances, would have been frivolous, or would have, arguably, lacked procedural or substantive merit, or would likely not have changed the outcome of the proceeding. *Heddings v. State*, 2011 MT 228, ¶ 33, ___ Mont. ___, ___ P.3d ___.

¶12 A defendant must also establish prejudice – that but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *Gunderson*, ¶ 67. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Robinson v. State*, 2010 MT 108, ¶ 12, 356 Mont. 282, 232 P.3d 403. The prejudice inquiry focuses on whether counsel's deficient performance renders the trial result unreliable or the proceedings fundamentally unfair. *State v. Rose*, 2009 MT 4, ¶ 115, 348 Mont. 291, 202 P.3d 749 (abrogated on other grounds).

### A. Alleged Pretrial Errors

#### 1. Pretrial Motions

¶13 First, Riggs alleges that Watson failed to file any pretrial motions, other than one motion to sever. He argues the motion to sever "neglected to put forward the best argument

5

for severance." This, Riggs argues, "entitles" him to a presumption of ineffectiveness. However, the presumption of ineffectiveness arises only in extraordinary circumstances, such as when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 659 (1984); *Hammer v. State*, 2008 MT 342, ¶ 12, 346 Mont. 279, 194 P.3d 699. Counsel's failure must be complete. *Bell v. Cone*, 535 U.S. 685, 696-97 (2002).

¶14 The circumstances that allow for a presumption of ineffectiveness are not present here. Watson did more than file one motion to sever, as we noted in *Riggs*, ¶ 8. He also moved to dismiss several charges for lack of probable cause. *Riggs*, ¶ 8. Watson also filed various other pretrial motions, and successfully argued for the exclusion of certain evidence before opening statements. There was not a complete failure on Watson's part to test the prosecution's case. Further, Riggs has not shown how Watson's failure to file additional or different motions would have resulted in a different outcome. *Heddings*, ¶ 33. Riggs has simply not demonstrated either *Strickland* prong. We find no ineffectiveness on this issue.

### 2. Witness Interviews

¶15 Here, Riggs argues that Watson's "failure to conduct <u>any</u> investigation constitutes neglect and deficient representation." (Emphasis in original). Watson's failures, according to Riggs' position on appeal, are failing to interview numerous witnesses, including CJ Gonder ("Gonder"), Riggs' son Daron Riggs ("Daron"), and Jason Sullivan ("Sullivan"). Riggs claims that Gonder's and Daron's testimony would exonerate him. Riggs also claims Sullivan's testimony would be "exculpatory and would have told the jury that [S.M.], at

6

least, lied about sex." Riggs alleges Watson "didn't interview anybody" and that failure destroyed Riggs' life.

¶16 Watson had a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Weaver v. State*, 2005 MT 158, ¶ 17, 327 Mont. 441, 114 P.3d 1039 (citing *State v. Thomas*, 285 Mont. 112, 119, 946 P.2d 140, 144). We assess a decision not to investigate for reasonableness in light of all the circumstances of the case, "applying a heavy measure of deference to counsel's judgments." *Weaver*, ¶ 17. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. *Strickland*, 466 U.S. at 691; *Thomas*, 285 Mont. at 117-18, 946 P.2d at 143.

¶17 To say that Watson failed "to conduct any investigation" is an overstatement. Watson testified that "we interviewed everybody who could reasonably have any information about this case." He further testified that he determined who may have information based upon "interviewing everybody who Rob [Riggs] and LaRae [Riggs' then-wife ("LaRae")] suggested we interview as well as my determination." Notably, according to Watson, neither Riggs nor LaRae mentioned that Gonder or Daron would have useful information.

¶18 Watson's private investigator, Linda Sanem ("Sanem"), conducted most of the witness interviews. Watson explained that he did this so his investigator could be called to impeach a witness if the witness's story changed. The record reveals that Sanem conducted many interviews, including Detective Hanson (the primary investigator), M.J., S.M., D.C., D.M., Riggs, LaRae, and Sullivan, as well as others. Sanem testified that, based on the

7

information she gleaned, she never felt it necessary to interview Gonder or Daron. Sanem was in regular contact with Watson about the interviews and investigation.

¶19 Assuming that Watson did not meet his duty to investigate, Riggs must still show a reasonable probability that, had Watson interviewed the witnesses, the outcome would have been different - that is, the information obtained from these witnesses would have produced a different result. *Weaver*, ¶ 21. Riggs has not met this burden.

¶20 We agree with the District Court that Gonder's testimony was less than convincing. His hearing testimony conflicts with Riggs' and LaRae's trial testimony, which never mentioned Gonder's presence at their home on September 25, 1999 (the night D.M. was assaulted) or November 3, 2000 (the night S.M. was assaulted).[1] His hearing testimony also somewhat conflicts with his own affidavit. Ultimately, Gonder could not be sure of the dates he was at the Riggs' home or who was present. Gonder's testimony is far from "exculpatory" as Riggs has alleged. Riggs has not shown a reasonable probability that the outcome of the trial would have been different if Watson had interviewed Gonder.

¶21 Daron's testimony suffers the same problems as Gonder's. His testimony about who was present in Riggs' home conflicts with undisputed trial testimony about who was or was not present in the home on September 25, 1999, and November 3, 2000. Additionally, the affidavit he submitted was not prepared by him, but by an investigator for Riggs. We agree with the District Court that Daron demonstrated little independent, reliable recall about the events of September 25, 1999, and November 3, 2000. Riggs has not shown a reasonable

---

[1] Riggs mentions Daron had a "friend" over on November 3, 1999. He does not mention Gonder.

8

probability that the outcome of the trial would have been different if Watson had interviewed Daron.

¶22 Regarding Sullivan, this claim was dismissed on the pleadings by the District Court. Riggs attempts to make an argument here about Watson's failure to call Sullivan as a witness, not failure to interview. Sanem did, in fact, interview Sullivan. Sullivan met Riggs in the Gallatin County jail, then came forward with a story about S.M. and D.C. being "very sexual and aggressive" at a party. It is not at all clear that Sullivan's story was admissible, especially given § 45-5-511, MCA (Montana's rape shield statute), and Riggs has cited no Montana authority to support its admissibility. Riggs has not demonstrated a reasonable probability that, had Watson called Sullivan as a witness, the outcome of the trial would have been different.

¶23 Riggs has made no argument on appeal regarding any other specific witnesses that should have been interviewed, and we will not make his arguments for him. *In re B.P.*, ¶ 41. Riggs has not met his burden under *Strickland*; therefore his ineffective assistance of counsel claims for failure to interview witnesses fail. We find no ineffectiveness on this issue.

### 3. Amendment of the Information

¶24 The Information charged Riggs with sexual assault against M.J. "committed within the month of March, 2001[.]" The State sought to amend the Information to change the date from March 2001 to November 2000. The motion stated "The amended charge is supported by the original affidavit of probable cause. Defense counsel [Watson] has been advised of the instant motion and has no objection." The State filed its motion to amend on March 1,

2002. Trial began on March 4, 2002. Before voir dire, the State addressed the pending motion. The District Court sought Watson's position on the motion. Watson stated "I don't have any objection. I think they're entitled to amend the Information on, you know, a technicality up to the time of trial. I have no objection." The District Court granted the motion to amend.

¶25 Riggs argues that the amendment was not merely to form, but to substance, and as such was prohibited by § 46-11-205(1), MCA, which bars the State from substantively amending an Information within 5 days of trial. The District Court determined this claim was record based, and therefore could not be raised in a petition for postconviction relief, but rather must have been raised on direct appeal. Since Riggs did not raise the issue on direct appeal in *Riggs*, the District Court dismissed the claim as procedurally barred. Riggs argues it was error for the District Court to dismiss the claim without a hearing because the record did not reveal why Watson did not object.

¶26 An amendment is one of form where the same crime is charged, the elements of the crime and the proof required remain the same, and the defendant is informed of the charge against him. *State v. Spotted Eagle*, 2010 MT 222, ¶ 10, 358 Mont. 22, 243 P.3d 402. Unless the time of an event is a "material ingredient in the offense," timing is not required to be stated with "impossible precision." *State v. Shaver*, 233 Mont. 438, 445-46, 760 P.2d 1230, 1234-35 (1988). Especially in cases of child abuse, this court has not required the information to precisely state the time of an offense. *Shaver*, 233 Mont. at 445-46, 760 P.2d at 1234-35.

¶27 Under the particular facts of this case, the amendment was to form only, and as such, it was not ineffective for Watson to fail to object. All of the elements of the sexual assault charge remained the same, the proof required was the same, and Riggs was informed of the charge. The affidavit of probable cause discusses two incidents regarding M.J. – one occurring in November 2000 and one occurring during "spring break." Riggs had notice, from the time he was originally charged, that the State was alleging that he sexually assaulted M.J. in November 2000. Although the claim was dismissed as procedurally barred before the hearing, Riggs did question Watson at the hearing about why he did not object to the amendment. Watson stated "I think as I recall, I knew all along that this was one incident in November and that this was just a typo." Further, the only testimony the State elicited from M.J. at trial was about the incident in November 2000.

¶28 Based upon all the information in the record, we find that Riggs has not met his burden under *Strickland* to show that both Watson's failure to object fell below an objective standard of reasonableness, and that if Watson had objected, there exists a reasonable probability that the outcome of the trial would have been different. We find no ineffectiveness on this issue.

### 4. Witness preparation

¶29 Riggs argues that Watson failed to prepare him and LaRae to testify at the trial. He argues "Watson didn't do anything right." The crux of the argument appears to be that Watson was ineffective in preparing the witnesses because the prosecutor asked Riggs "If this jury is to believe your testimony today, they must conclude that" the girls have got to be "mistaken or lying?" Boggs, Riggs' expert, testified that "if you've set up your client to

11

testify and that's going to be the last question he's asked, he shouldn't be there, and you haven't done anything right. You can't have that question asked[.]"

¶30     The State argues that Riggs is essentially blaming Watson for allowing him to testify, instead of getting Riggs a plea agreement. Further, the State argues that no amount of preparation could overcome the truth, and that Riggs has failed to show how any additional preparation would have changed the outcome of the trial.

¶31     Regarding Watson's alleged failure to prepare LaRae to testify, we conclude Riggs' claim has no merit. LaRae testified at the hearing that Watson spent time with her and she "felt prepared. I felt like we had – we, I guess at that time, had an awesome defense." Riggs himself testified "I'm not going to say she didn't do a – have a good testimony at my trial." LaRae also testified that she and Riggs were using drugs and alcohol frequently in the months leading up to trial, and would fall out of contact with Watson. She testified "I think [Watson] was providing the best assistance he could. I'm not sure there was a whole lot of cooperation . . . [f]rom Rob, from me, from really anyone." Riggs has not shown that a reasonable probability exists that, had Watson spent more time preparing LaRae, the outcome of the trial would have been different.

¶32     Regarding Watson's alleged failure to prepare Riggs, Watson testified that he spent "at least a dozen" hours preparing Riggs. Riggs testified during his four or five in-person meetings with Watson "there was never any preparation for my trial." Significantly, Riggs never testified to what he felt Watson should have done to prepare him for his trial testimony. Nor has he argued on appeal what Watson should have done, or how further preparation would have resulted in a different outcome at trial. Riggs simply states "[t]he

trial transcript bears witness to Watson's failure to prepare Riggs and his wife to testify." Based upon both the record and the testimony from the hearing, it is unclear how any additional preparation by Watson could have resulted in either Riggs not testifying, or the prosecution not asking that particular question. Success is not the test of efficient counsel. *State v. Martz*, 233 Mont. 136, 140, 760 P.2d 65, 68 (1988). That Boggs would have prepared Riggs differently does not make Watson ineffective. *Strickland*, 466 U.S. at 689.

¶33 Riggs has not met his burden under *Strickland*. He has not shown that, had Watson spent more time preparing him to testify, there is a reasonable probability that the outcome would have been different.

### 5. State's rebuttal expert

¶34 Riggs appears to argue both that Watson was ineffective for failing to object to the "late" disclosure of the State's rebuttal expert, Dr. Bellante, and for failing to object because her expert report was not disclosed. For these propositions, he cites § 46-15-322(6), MCA, which states:

> The prosecutor shall furnish to the defendant no later than 5 days before trial or at a later time as the court may for good cause permit, together with their statements, a list of the names and addresses of all persons whom the prosecutor intends to call as rebuttal witnesses to evidence of good character or the defenses of alibi, compulsion, entrapment, justifiable use of force, or mistaken identity or the defense that the defendant did not have a particular state of mind that is an element of the offense charged.

¶35 This section applies only to rebuttal witnesses called for the specific purposes listed in the statute. *See State v. Sage*, 221 Mont. 192, 196, 717 P.2d 1096, 1098 (1986) (the duty to disclose rebuttal witnesses does not arise until the defendant has given notice of affirmative defenses). Dr. Bellante was called to rebut Riggs' expert testimony regarding investigative

13

techniques employed by the officers who interviewed the four girls. Section 46-15-322(6), MCA, does not apply to Dr. Bellante's testimony.

¶36 Further, even if it did apply, the notice was filed more than five days before the trial, and was not late. Watson testified that he did not object because "I had actual notice well prior" to the formal notice. Watson did not move for Dr. Bellante's expert report under § 46-15-322(1)(c), MCA[2], because he "previously determined that there were no notes or records." There is no evidence in the record that any report, or statement, was prepared by Dr. Bellante.

¶37 Based upon these facts, we agree with the District Court that Riggs failed to show that Watson's decision not to object for either "late" disclosure or failure to file an expert report[3] was objectively unreasonable. We also agree that Riggs has not shown that had Watson objected, a reasonable probability exists that the outcome of the trial would have been different. *Heddings*, ¶ 33. We find no ineffectiveness on this issue.

### B. Trial Errors

#### 1. Voir Dire

¶38 Riggs argues that Watson's failure to strike juror Donahue, who served on the jury, from the panel was "a very serious professional mistake that probably affected the fact finding body." He also argues that Watson did not delve further into juror Klein's relationship with M.J.'s family, and used a preemptory challenge instead of challenging

---

[2] We note this statute is not cited in Riggs' appellate briefs.
[3] Watson did object to Dr. Bellante's testimony on other grounds. We affirmed the District Court's ruling on Dr. Bellante's testimony. *Riggs*, ¶¶ 25-32.

14

Klein for cause. Riggs argues these juror errors were structural, thus prejudice must be presumed.[4]

¶39 The State argues Watson fulfilled his duty to ensure Riggs' right to a fair trial by a panel of impartial jurors. Specifically, the State argues that juror Donahue did not express any bias against Riggs, and his responses during voir dire did not require Watson to remove him from the jury panel. Regarding juror Klein, the State argues Riggs has not shown any prejudice because Klein did not serve on the jury.

¶40 The purpose of voir dire in a criminal case is to determine the existence of a prospective juror's partiality, that is, his or her bias and prejudice. *State v. Herrman*, 2003 MT 149, ¶ 23, 316 Mont. 198, 70 P.3d 738. The right to a trial by an impartial jury is principally secured through the voir dire and challenge process; therefore, defense counsel must develop information in the record that demonstrates a juror's bias as to a party or issue in the case. *State v. Lamere*, 2005 MT 118, ¶ 15, 327 Mont. 115, 112 P.3d 1005. Adequate voir dire enables counsel to properly raise challenges for cause. *Lamere*, ¶ 15. Adequate voir dire also enables counsel to intelligently exercise preemptory challenges, which are essentially a matter of trial strategy. *Lamere*, ¶ 15.

¶41 Disqualification based on a juror's prejudice is necessary only when a juror forms a fixed opinion on the guilt or innocence of the defendant which he or she would not be able to lay aside and render a verdict based solely on the evidence presented in court. *Whitlow*, ¶ 30 (citing *State v. Freshment*, 2002 MT 61, ¶ 12, 309 Mont. 154, 43 P.3d 968.).

---

[4] Riggs mentions juror Flory in his statement of facts, but makes no argument regarding the District Court's dismissal of that claim. Therefore, we will not address juror Flory.

¶42 Jury selection is "critically important" in assuring the defendant's fundamental right to a fair trial and impartial jury. *Lamere*, ¶ 24. Errors in the jury selection process are structural errors. *Lamere*, ¶ 24. Structural errors undermine the fairness of the entire proceeding and are presumptively prejudicial. *Lamere*, ¶ 25.

### i. Juror Klein

¶43 Riggs' claim regarding Watson's questioning of Klein was dismissed by the District Court as record-based, and thus it should have been raised on appeal. We agree with the ultimate conclusion, although for a different reason - Riggs has not shown Watson's performance was deficient. Watson questioned Klein about his knowledge of M.J.'s family. Klein said "I know Rick [M.J.'s father]." Watson asked Klein if he would "be hampered by your concerns about what might occur or what you might have to deal with in the event you return a not guilty verdict based on your personal relationship with [M.J.] and her family." Klein responded "I have no personal relationship with her. I'm not sure I have ever met the child." Klein also said "I think there would be a lot of agony, but hopefully, we'll have the instructions necessary as a jury to weigh the evidence on the basis of how it's presented in fairness associated with it. I think I could personally set aside any feelings towards that . . . ." Finally, Klein said he could find Riggs not guilty if the State did not prove its case, even if he personally suspected Riggs was guilty.

¶44 Watson testified that, based on the entirety of the exchanges with Klein, he felt that Klein ultimately said he could set aside any potential for bias and be a fair juror despite knowing M.J.'s father. Therefore, Watson felt he had no basis to challenge Klein for cause. Klein, however, did not serve on the jury; he was removed with a preemptory challenge.

¶45 After reviewing all of Klein's answers during voir dire, and the evidence presented at the hearing on Riggs' Petition, we cannot say that Watson's questioning of Klein fell below an objective standard of reasonableness. Watson's questioning of Klein revealed that Klein could set aside any personal feelings, weigh the evidence presented, and acquit Riggs if the State did not prove its case. Watson was not ineffective in his questioning of Klein.

### ii. Juror Donahue

¶46 Riggs argues juror Donahue should not have served on the jury because of four specific answers he gave during voir dire. In response to one of the witnesses having a learning disability, Donahue said "I've had a learning disability all my life and I know what she's going through and what it can do to her." He also said, with that in mind, he would be able to weigh her (the witness's) credibility "accurately." Second, the prosecutor asked whether anyone had "a particularly strong feeling – is anybody a teetotaler? Yes, Mr. Donahue, you don't drink at all?" Donahue said "No, I had to quit six years ago." Donahue also said "alcohol will do strange things to people." When asked if he "could listen to the facts and reach an impartial decision without letting the alcohol evidence weigh too heavily" in his mind, Donahue responded "Well, I don't know; that's the question right there. I'd have to hear all the facts." Third, Donahue said he felt the defendant should testify, despite the defendant's right to not testify. Finally, in response to a question about how to cross-examine child victims, Donahue said children should not be cross-examined "like an adult would be." Donahue said that he could be impartial in a case like Riggs' (involving child sexual abuse).

17

¶47 The State argues that Watson's decision to keep Donahue on the jury panel was reasonable, given Watson's explanation. Watson testified that he didn't find anything about Donahue's answers that would indicate partiality or bias. Watson felt Donahue's statement regarding having a learning disability was not "particularly noteworthy," nor did he feel it would create any sympathy with the witness. Watson testified that Donahue's statements about alcohol raised no alarm because Watson never thought alcohol was an issue in the case in any significant sense – "nobody testified he [Riggs] was intoxicated." Also, Watson said he would be suspicious of a juror that did not think alcohol would do strange things to a person. Watson felt that was a commonly held belief. Watson was also not troubled about Donahue's feeling that the defendant should testify because Riggs intended to testify, and Watson felt "this guy would be reassured and be more likely to believe him [Riggs]." Finally, regarding Donahue's feelings on cross-examining the victims, Watson felt that Donahue's response did not indicate bias or impartiality because Watson also felt "you have to be careful about how you cross-examine child victims."

¶48 The District Court found that Watson's failure to use a preemptory challenge on Donahue was objectively reasonable and was not ineffective assistance.

¶49 We agree with the District Court. After reviewing all of Donahue's answers during voir dire, and the evidence presented at the hearing on Riggs' Petition, we cannot say that Watson's handling of Donahue fell below an objective standard of reasonableness. Even Boggs agreed that a reasonable attorney could form different opinions about Donahue's statements regarding alcohol and Donahue's desire for the defendant to testify. Donahue's responses, in their totality, do not reveal any prejudice or bias against Riggs. It is reasonable

that Watson made a strategic decision to keep Donahue on the jury in light of the case Watson was going to present. Watson was not ineffective.

## 2. Witnesses' Prior Consistent Statements

¶50 Riggs argues that the stories of the four girls, "the State's only evidence against Riggs, were swaddled in the credibility of adults and presented once, twice and three times to the jury through social workers, law enforcement officers, and the girls' mothers." Riggs argues several witnesses offered prior consistent statements, which were inadmissible at trial because there was no allegation of subsequent fabrication, improper influence, or motive. Riggs argues Watson's failure to object to the admission of the statements was ineffective assistance of counsel.

¶51 The State argues that many of the witnesses cited by Riggs did not actually testify to prior consistent statements by the girls. Further, the State argues it was part of Riggs' defense strategy to show the inconsistencies in the multiple statements made by the girls to detract from their credibility. Therefore, Watson did not object to the admission of the girls' multiple statements for strategic reasons.

¶52 The District Court found that Boggs' testimony at the hearing showed that the alleged prior consistent statements were not hearsay, were successfully objected to, or were inconsistent with other statements made by the girls. While Boggs may have taken a different strategic approach to the case, and the statements specifically, the District Court found that Watson's approach was not ineffective.

¶53 We agree with the District Court. Counsel's use of objections lies within his or her discretion. *Clausell v. State*, 2005 MT 33, ¶ 20, 326 Mont. 63, 106 P.3d 1175. Objections

19

may, or may not, be made for any number of reasons. *See State v. Olsen*, 2004 MT 158, ¶ 17, 322 Mont. 1, 92 P.3d 1204. Here, no objection was made because Watson wanted to point out the numerous inconsistencies in the girls' statements. Watson testified that he wanted to use the girls' various statements at trial to "impeach[] these girls to death with what [Riggs] is now calling consistent statements which don't strike me as being consistent at all."

¶54 Boggs' testimony was, essentially, that if all you have is inconsistent victim statements, you "quite likely" should not be at trial in the first place. In other words, he did not agree with Watson's strategy. Differing strategies cannot be the basis for an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."). We conclude that Watson's trial strategy was objectively reasonable. Riggs has not met the first *Strickland* prong; thus, his claim fails.

### 3. Riggs' Statements

¶55 Finally, Riggs argues that Watson was ineffective for failing to object or move to exclude several of Riggs' own statements made to law enforcement during the 1999 investigation regarding D.M.'s allegations. Riggs' specific statements were: that he had been molested as a child, that he had more to do than "talk about some shit that some lying little kid was talking . . . about him[,]" and "why would I do that to somebody else if I could do it to my own kids" but that he would not do that. Riggs argues these statements were inadmissible 1) because they were bad character evidence under *State v. Gommenginger*, 242

20

Mont. 265, 270-71, 790 P.2d 455, 459 (1990), and 2) by operation of § 41-3-202(5)(b), MCA. The State argues that the statements were not bad character evidence and that § 41-3-202(5)(b), MCA, has no application in this case.

¶56 The District Court found that Riggs' statements were admissible under M. R. Evid. 801(d)(2)(A) as the admissions of a party opponent. The District Court also declined to address Riggs' argument regarding § 41-3-202(5)(b), MCA, finding it was raised on appeal and considered by this Court.

### i. Bad Character Evidence

¶57 We do not agree that Riggs' statements were bad character evidence under *Gommenginger*. *Gommenginger* dealt with the testimony of one police officer, who testified that he learned from confidential informants and other officers that the defendant was a drug dealer. We concluded his testimony amounted to "hearsay" and contained "elements of both opinion and reputation evidence" and its admission constituted reversible error. *Gommenginger* did not deal with statements made by the defendant himself, and has no application here.

¶58 Riggs' statements were admissible under M. R. Evid. 801(d)(2)(A) which provides that a statement is not hearsay if the statement is offered against a party and is the party's own statement. *State v. Smith*, 276 Mont. 434, 441, 916 P.2d 773, 777 (1996). Just as in *Smith*, the statements were made by the defendant in a criminal case (Riggs), offered against him by the prosecution, through the testimony of the person to whom the statements were made. *Smith*, 276 Mont. at 441, 916 P.2d at 777. The statements were admissible.

21

¶59 Watson was not ineffective for failing to object to the admission of these statements under *Gommenginger*. *Heddings*, ¶ 33. The statements were admissible and did not constitute bad character evidence.

### ii. Section 41-3-202(5)(b), MCA

¶60 While we did not consider on direct appeal the issue of the applicability of § 41-3-202(5)(b), MCA, we agree with the result the District Court reached. Section 41-3-202(5)(b), MCA, deals with the Department of Public Health and Human Services' (DPHHS) handling and retention of reports of child abuse or neglect. Riggs' statements were made in connection with a DPHHS investigation in 1999, which was closed as "unfounded" by Detective Hanson. Riggs argues that § 41-3-202(5)(b), MCA, required the destruction of the reports from that investigation well before his trial in 2002 - "within 30 days of the determination that the child has not suffered abuse or neglect." Section 41-3-202(5)(b), MCA. The State argues that while Detective Hanson used the word "unfounded" he was not using it in the technical sense required under the child abuse and neglect statutes, thus the correct destruction period is found in § 41-3-202(5)(c)(i), MCA, which governs unsubstantiated reports.

¶61 After a review of the report and the hearing testimony, we agree with the State. "Unfounded" means "after an investigation, the investigating person has determined that the reported abuse, neglect, or exploitation has not occurred." Section 41-3-102(31), MCA. "Unsubstantiated" means "after an investigation, the investigator was unable to determine by a preponderance of the evidence that the reported abuse, neglect, or exploitation has occurred." Section 41-3-102(32), MCA. Detective Hanson's report does not say that the

22

abuse did not occur, rather it says "[a]s no corroborating evidence exists, recommend the case be closed as unfounded." Indeed, the report's substance indicates more than an "unfounded" report. Further, Gayle Frandsen, a DPHHS employee, testified at the hearing that her records indicated the 1999 D.M. investigation was closed as "unsubstantiated, no charges being filed."

¶62 The report was classified by DPHHS as unsubstantiated, and therefore § 41-3-202(5)(c)(i), MCA, applies. That section provides that unsubstantiated reports are destroyed "within 30 days after the end of the 3-year period starting from the date the report was determined to be unsubstantiated." Section 41-3-202(5)(c)(i), MCA. Under this statute, the destruction date of the report would have been *after* Riggs' trial.

¶63 We find no ineffectiveness on Watson's part for failing to attempt to exclude Riggs' statements under § 41-3-202(5)(b), MCA. It does not apply to the 1999 report. *Heddings*, ¶ 33.

## CONCLUSION

¶64 For the reasons stated above, we affirm the District Court's dismissal of Riggs' Petition. Because we find no ineffective assistance of counsel on Riggs' individual claims, there can be no cumulative error.

¶65 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON

23

/S/ PATRICIA COTTER
/S/ BETH BAKER