
DA 11-0547

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 274

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

RICHARD KENNETH PEART,

      Defendant and Appellant.


APPEAL FROM:     District Court of the Eighth Judicial District,
                       In and For the County of Cascade, Cause No. ADC 09-501
                       Honorable Thomas M. McKittrick, Presiding Judge


COUNSEL OF RECORD:

       For Appellant:

             Wade Zolynski, Chief Appellate Defender; Jacob Q. Johnson, Assistant
             Appellate Defender, Helena, Montana

       For Appellee:

             Steve Bullock, Montana Attorney General; Mardell Ployhar, Assistant
             Attorney General, Helena, Montana

             John Parker, Cascade County Attorney; Kory Larsen, Deputy County
             Attorney, Great Falls, Montana


                          Submitted on Briefs:  August 1, 2012
                                    Decided:  December 4, 2012


Filed:

                       _____
                                  Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Richard Peart (Peart) appeals his conviction of one count of incest in the Eighth Judicial District Court, Cascade County.  The District Court sentenced Peart to 100 years in the Montana State Prison with a possibility of parole after fifty years.  The District Court designated Peart a Level 3 sexual offender.  We affirm.

¶2     Peart raises the following issues:

¶3     *Did Peart's trial counsel fail to subject the State's case to meaningful adversarial testing at sentencing and thereby render ineffective assistance of counsel?*

¶4     *Did Peart's trial counsel render ineffective assistance of counsel by making no alternative sentencing recommendation?*

## BACKGROUND

¶5     Peart was arrested on December 15, 2009, and charged with five counts of incest and one count of obscenity.  The State later amended these charges to one count of incest.  Law enforcement officers arrested Peart after they were contacted by the Department of Family Services and informed that Peart's 10-year-old daughter, A.P., was alleging that Peart had sexually abused her.  Peart was later determined to be A.P.'s stepfather.

¶6     Peart made incriminating statements against his interest when questioned by law enforcement.  Peart admitted to having photographed acts of abuse and admitted that he had touched A.P. inappropriately.  Law enforcement officials obtained a search warrant for Peart's residence.  Law enforcement officers seized Peart's computer and camera and recovered images from these items.  The recovered images graphically revealed Peart's sexual abuse of A.P.

2

¶7     Peart's counsel engaged in multiple pre-trial actions on Peart's behalf. Peart's counsel filed five separate motions before the District Court. These filings included motions to produce records and a motion to depose a witness. Peart's trial counsel filed these motions to access information that Peart's counsel believed would support Peart's theory in the case—that the person in the photos was not Peart. Peart's counsel argued in support of these motions at two separate hearings. Peart's trial counsel also conducted a thorough voir dire of the jury panel.

¶8     Peart's counsel vigorously defended Peart at trial. Peart's counsel objected to the introduction and authentication of the photographs that law enforcement officers had recovered from Peart's camera and computer. Peart's counsel objected to the introduction of photographs that depicted Peart nude below the waist. Peart's counsel also vigorously cross-examined the State's witnesses. Peart's counsel presented testimony from three expert witnesses who testified on Peart's behalf. Through these experts Peart's trial counsel challenged the veracity of A.P.'s abuse claims. A jury convicted Peart of incest despite the efforts of Peart's counsel.

¶9     Peart refused to cooperate after his conviction with the development of information for the District Court to consider at sentencing. District courts rely upon reports from a defendant's pre-sentencing investigation (PSI) to determine an appropriate sentence for a sexual offender. An offender must cooperate in the preparation of at least three sections of the PSI: a PSI questionnaire, a PSI interview, and a psychosexual evaluation. Peart refused to cooperate in preparing all three of these sections.

¶10     An offender's PSI participation affords the offender the opportunity to provide his side of the story—including potentially mitigating information that a court can take into account when it imposes a sentence.  These sections also provide information to those preparing subsequent parts of the PSI.  These subsequent evaluators include the probation officer who compiles all of the information into the final version of the PSI and uses the information compiled in the PSI to make a sentencing recommendation to the district court.  By providing information during the PSI proceeding, an offender may reveal potential witnesses whom his counsel could call at the sentencing hearing.  An offender also may reveal information that an offender's counsel could use at sentencing to cross-examine the State's witnesses.

¶11     Probation officer Susan F. Carroll (Carroll) prepared Peart's PSI.  Peart's refusal to cooperate forced Carroll to prepare the PSI without any input from Peart.  Carroll made a number of findings regarding Peart.  She found that Peart had no empathy for the victim or the victim's siblings.  Carroll noted, further, that Peart "manipulate[d] those around him and groom[ed] his own children for his own gratification."  Carroll recommended that the court sentence Peart to a period sufficient to "ensure he is not released into the community and these children can have some thought of protection from [Peart] for the remainder of their lives."  Peart's uncooperativeness forced Carroll to make her findings in the PSI, compile the PSI, and make a sentencing recommendation all without the aid of a current psychosexual evaluation or risk assessment based on a current psychosexual evaluation.  Carroll and other evaluators, instead, had to rely on information from a previous PSI prepared for a 2001 conviction of Peart's.

4

¶12 Dr. Michael J. Scolatti (Dr. Scolatti), clinical psychologist, performed Peart's risk assessment. Risk assessments use, among other information, an offender's psychosexual evaluation to assess the risk that an offender will reoffend. Peart's lack of cooperation forced Dr. Scolatti to prepare his risk assessment using Peart's 2001 PSI and other collateral documentation. Dr. Scolatti reported that Peart possessed many of the antisocial features of a psychopath. Dr. Scalatti reported further, that Peart "is likely to be easily offended, short–tempered and aggressive and prone to engage in a wide variety of antisocial and illegal activities."

¶13 A PSI also includes relevant criminal information. This relevant information included a description of Peart's prior criminal offenses and the fact that courts twice had revoked Peart's suspended sentence due to his violations of the sentencing conditions. By refusing to participate in the PSI process, Peart rejected the opportunity to explain these violations and suggest whether the court should account for them in imposing sentence.

¶14 The State presented three witnesses at the sentencing hearing. A.P. and A.P.'s mother testified. A family friend read a letter from A.P.'s great-grandmother. Peart's counsel did not cross-examine these witnesses. Peart's counsel called no witnesses on Peart's behalf. Peart's counsel raised only one objection during the sentencing hearing. The District Court overruled the objection.

¶15 The nature of Peart's conviction subjected him to a sentencing enhancement that would increase Peart's minimum mandatory sentence. This mandatory sentencing enhancement applies when a rape victim is under the age of 12 and the perpetrator of the rape is over the age of 18. Section 45-5-507(5)(a), MCA. A.P. was under the age of 12 and

Peart was over the age of 18. The sentencing enhancement imposes a mandatory minimum sentence of 100 years in prison with a 25-year parole restriction. The sentencing enhancement provides that a court may not suspend execution or defer imposition of the first 25 years of the sentence.

¶16 The State recommended that the District Court sentence Peart to 100 years in prison with 50 years suspended and a 50-year parole eligibility restriction. When the District Court inquired of Peart's counsel regarding a sentencing recommendation, Peart's counsel replied, "I have no recommendation for the court." Peart's counsel provided no explanation for not making a sentencing recommendation.

¶17 The District Court imposed a harsher sentence than the sentence recommended by the State. The District Court sentenced Peart to 100 years in the Montana State Prison with a 50-year parole restriction as requested by the State. The State requested that the court suspend no more than 50 years of Peart's sentence. The District Court, in fact, did not suspend any of Peart's sentence. The District Court also concluded that Peart qualified as a sexually violent predator as defined under § 46-23-502(11)(b), MCA.

¶18 The District Court concluded that Peart posed a high risk to reoffend. The court noted the calculated nature of Peart's offense and the fact that Peart had photographed the criminal acts. The District Court stated its intent that Peart be ineligible for parole until he was at least 85 years old. The District Court cited Peart's extensive criminal and substance abuse history in imposing sentence. The court also found that Peart's prospects for rehabilitation were "simply nonexistent."

**STANDARD OF REVIEW**

¶19 We review de novo the mixed issues of law and fact presented by claims of ineffective assistance of counsel. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861.

## DISCUSSION

¶20 *Did Peart's trial counsel fail to subject the State's case to meaningful adversarial testing at sentencing and thereby render ineffective assistance of counsel?*

¶21 Peart asserts that his counsel rendered ineffective assistance of counsel during sentencing. Peart asserts first that his trial counsel rendered ineffective assistance of counsel by failing to subject the State's case at sentencing to meaningful adversarial testing. Alternatively, Peart asserts that his trial counsel rendered ineffective assistance of counsel by making no sentencing recommendation.

¶22 We generally apply the analysis developed by the United States Supreme Court, in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1984), to claims of ineffective assistance of counsel. *See Riggs v. State,* 2011 MT 239, ¶ 9, 362 Mont. 140, 264 P.3d 693. To prevail under *Strickland* a defendant must establish that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant. *Rosling v. State,* 2012 MT 179, ¶ 23, 366 Mont. 50, 285 P.3d 486. A defendant must establish both prongs of the test. *Whitlow,* ¶ 11. If a defendant fails to establish one prong, therefore, we will not address the other. *Whitlow,* ¶ 11.

¶23 To establish the second prong of *Strickland*, a defendant must show that the trial counsel's allegedly deficient performance prejudiced the defendant. *Whitlow,* ¶ 10. A defendant must demonstrate a reasonable probability that, but for his trial counsel's allegedly

7

deficient performance, the result of the sentencing proceeding would be different. *Worthan v. State*, 2010 MT 98, ¶ 16, 356 Mont. 206, 232 P.3d 380. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *St. Germain v. State*, 2012 MT 86, ¶ 11, 364 Mont. 494, 276 P.3d 886. A defendant must do more than just show that the alleged errors of a trial counsel "had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067.

¶24 The analysis in *U.S. v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984), provides an alternative to *Strickland* that we apply in extremely limited situations. We will presume prejudice when a case qualifies under *Cronic*. "Counsel's failure must be complete," however, in order to apply the *Cronic* analysis. *Riggs*, ¶ 13. To establish the presumption, a defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 1854 (2002) (internal quotations omitted).

¶25 Peart argues that his trial counsel failed entirely to subject the State's case to meaningful adversarial testing during the sentencing hearing. Peart points first to the fact that his counsel conducted no cross-examination of the State's witnesses at the sentencing hearing. Peart suggests not a single question, however, that his trial counsel should have asked of the State's witnesses on cross-examination. Peart's counsel would have been forced to cross-examine the victim, Peart's own stepdaughter. A jury already had found beyond a reasonable doubt that Peart had sexually abused her. Peart, not surprisingly, suggests no potentially fruitful areas of cross-examination of the victim.

8

¶26    The victim's mother would have been the next witness to cross-examine. Peart again fails, even with the benefit of hindsight and the perspective of appellate review, to suggest any areas of potentially fruitful cross-examination of the victim's mother. A friend of the victim's great-grandmother was the last witness Peart's trial counsel could have cross-examined at the sentencing hearing. This witness read a letter written by the victim's great-grandmother. Peart again suggests no potentially fruitful areas for his counsel to explore through cross-examination.

¶27    Peart argues next that his counsel failed to call any witnesses on Peart's behalf. Peart provides no name of a single witness whom his trial counsel should have called on Peart's behalf. Peart provides no name or occupancy of a professional whom his trial counsel should have called to testify on Peart's behalf. Peart declined to offer his side of the story to Carroll when she prepared the PSI or to Dr. Scolatti when he evaluated Peart. Peart further cites to the sole objection raised by his counsel at the sentencing hearing. Peart points to no testimony at the sentencing hearing, however, to which his trial counsel should have objected.

¶28    We decline to fault Peart's trial counsel for failing to do what Peart appears unable to do even with the benefit of "the harsh light of hindsight." *Bell*, 535 U.S. at 702, 122 S. Ct. at 1854. Peart's alleged omissions fail to establish that his trial counsel's performance fell below an objective standard of reasonableness. *Riggs*, ¶ 9. As a result, we need not consider Peart's assertion that *Cronic's* presumption of prejudice analysis should apply.

¶29    *Did Peart's trial counsel render ineffective assistance of counsel by making no alternative sentencing recommendation?*

9

¶30 Peart's remaining argument highlights his trial counsel's failure to make a sentencing recommendation. This argument focuses on a specific point at which Peart asserts that his trial counsel failed to act in a certain manner. The *Strickland* standard applies when a defendant contends that his counsel failed to oppose the State at specific points in the proceeding. *Bell*, 535 U.S. at 697, 122 S. Ct. at 1851. Peart cannot establish that his trial counsel's failure to offer an alternative sentencing recommendation resulted in the imposition of a more severe sentence. Accordingly, we will consider only the prejudice part of *Strickland. Whitlow*, ¶ 11.

¶31 Peart contends that a reasonable probability exists that Peart was prejudiced because "had counsel not effectively abandoned Peart at the sentencing hearing, the sentencing would not have been as severe." The District Court detailed a number of bases to support its sentencing determination. The court noted Peart's "extensive criminal and substance abuse history." Peart has been on probation from age 12 to 18. The court cited the "calculating and focused" nature of Peart's offense. Peart had taken pictures of A.P. while sexually abusing her and while she was nude. Peart had been having oral, anal, and vaginal intercourse with A.P. from when A.P. was 5 years old until she was 11 years old. A.P. and her half-brother will never be allowed to reside together again because Peart had raised A.P. and her brother in an "extremely sexualized environment." The court declared Peart to be a great risk to reoffend and that Peart's "prospects for rehabilitation were nonexistent." The court concluded, therefore, that Peart should not be eligible for parole until he was at least 85 years old.

¶32   We further observe that Peart failed entirely to cooperate with his psychosexual evaluation. He refused to sit for an interview with Dr. Scolatti. Peart further refused to cooperate in the preparation of the PSI. Peart declined to provide basic insight that the District Court normally uses in preparation for imposing a sentence. Peart does not allege that his trial counsel advised against Peart cooperating in the preparation of his sentencing hearing. It seems reasonable to assume, therefore, that Peart decided on his own to forgo any cooperation.

¶33   Despite this ill-advised decision, Peart seeks to shift blame to his trial counsel for the harsh sentence imposed by the District Court. This combination of factors supports the District Court's decision to settle on an appropriate sentence for Peart that exceeded the mandatory minimum required by § 45-5-507(5), MCA. Peart has failed to persuade the Court that a reasonable probability exists that a sentencing recommendation from Peart's counsel would have caused the District Court to impose a less severe sentence. *Worthan*, ¶ 16.

¶34   Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ BETH BAKER