DA 11-0764

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 164

DANNY SARTAIN,

      Defendant and Appellant,

   v.

STATE OF MONTANA,

      Plaintiff and Appellee.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 11-362B
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Danny Sartain, self-represented; Deer Lodge, Montana

      For Appellee:

      Steve Bullock, Montana Attorney General; Micheal S. Wellenstein,
Assistant Attorney General; Helena, Montana

      Marty Lambert, Gallatin County Attorney; Bozeman, Montana

Submitted on Briefs:  May 23, 2012

Decided:  July 31, 2012

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Danny Sartain (Sartain) appeals from an order of the Eighteenth Judicial District Court, Gallatin County, denying his motion for postconviction relief. We affirm and address the following issues:

¶2 *1. Did the District Court err in dismissing Sartain's ineffective assistance of counsel claims against his trial counsel?*

¶3 *2. Did the District Court err in dismissing Sartain's ineffective assistance of counsel claims against his appellate counsel?*

¶4 *3. Did the District Court abuse its discretion by failing to hold an evidentiary hearing on Sartain's petition?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 On March 25, 2008, Sartain was arrested and charged with burglary after he was found intruding in the house of Timothy Hop, of Bozeman. Hop grabbed a pistol, fired a warning shot, chased Sartain out of his house, and called 911. Other area residents observed Sartain cutting through yards, jumping a fence, and running down a street, where police apprehended him. *See State v. Sartain*, 2010 MT 213, ¶ 4, 357 Mont. 483, 241 P.3d 1032.

¶6 In January of 2009, Sartain's appointed counsel filed a motion to dismiss the burglary charge for lack of a speedy trial. After a hearing, the District Court denied the motion. Sartain was convicted of burglary following a two-day jury trial and sentenced as a persistent felony offender to 40 years in prison.

2

¶7 Sartain was assigned new counsel and filed an appeal. He challenged the District Court's denial of his speedy trial motion and alleged ineffective assistance by his trial counsel. This Court denied Sartain's speedy trial claim on its merits and dismissed his ineffective assistance claims "without prejudice to raising them in a post-conviction proceeding" because the trial record was silent about why defense counsel had acted or failed to act as claimed by Sartain. *Sartain*, ¶¶ 26, 31.

¶8 Sartain thereafter filed a petition for postconviction relief alleging that both his trial and appellate counsel were ineffective. Without conducting a hearing, the District Court issued an order dismissing Sartain's petition. Sartain appeals.

## STANDARD OF REVIEW

¶9 In postconviction relief proceedings, we review a district court's findings of fact to determine if they are clearly erroneous and its conclusions of law to determine if they are correct. *Rogers v. State*, 2011 MT 105, ¶ 12, 360 Mont. 334, 253 P.3d 889. "Ineffective assistance of counsel claims present mixed questions of law and fact that the Court reviews de novo." *Rogers*, ¶ 12. A petitioner seeking to reverse a district court order denying postconviction relief based on ineffective assistance of counsel has a heavy burden. *State v. Morgan*, 2003 MT 193, ¶ 9, 316 Mont. 509, 74 P.3d 1047.

## DISCUSSION

¶10 Sartain alleges that both his trial counsel, Casey R. Moore (Moore), and appellate counsel, Nancy G. Schwartz (Schwartz), provided ineffective assistance of counsel. Sartain's primary claims against Moore are that he failed to introduce letters and a motion

3

to dismiss penned by Sartain regarding speedy trial, failed to make an opening statement at trial, failed to challenge a "show-up" identification, failed to challenge the warrantless arrest, failed to move to suppress statements Sartain gave to police, failed to make certain objections during trial, did not allow Sartain to testify, failed to raise a potential *Brady* violation, and failed to challenge Sartain's sentence as illegal. Sartain alleges Schwartz was ineffective because she failed to raise the alleged *Brady* violation and the admissibility of evidence regarding a shoe print, a pry bar, and K-9 tracking.

¶11 When evaluating a claim of ineffective assistance of trial counsel, we use the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861. Under the first prong of the *Strickland* test, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Whitlow*, ¶ 14 (quoting *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064). Under the second prong of *Strickland*, the defendant must show that counsel's performance prejudiced the defense. *Whitlow*, ¶ 10 (citing *State v. Racz*, 2007 MT 244, ¶ 22, 339 Mont. 218, 168 P.3d 685). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In short, the defendant must prove (1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defense. *Whitlow*, ¶ 10 (citation omitted). Because a defendant must prove both prongs, an insufficient showing under one prong eliminates the need to address the other.

4

*Whitlow*, ¶ 11 (citing *Adams v. State*, 2007 MT 35, ¶ 22, 336 Mont. 63, 153 P.3d 601). In order to eliminate "the distorting effects of hindsight," judicial scrutiny of counsel's performance is highly deferential. *Whitlow*, ¶ 15; *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. As the U.S. Supreme Court has noted, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

¶12 *1. Did the District Court err in dismissing Sartain's ineffective assistance of counsel claims against his trial counsel?*

**A. Speedy Trial**

¶13 Following Sartain's arrest and release on bond, he was taken into custody by a parole officer and returned to Montana State Prison on a parole violation, delaying his appearance in the District Court on these charges until July 7, 2008. *Sartain*, ¶ 6. During the omnibus hearing in August 2008, defense counsel Moore asked for a three-day trial setting. Moore was unavailable in September because of National Guard commitments, and thus the next available three-day setting was in March 2009. Although the prosecutor indicated a preference for an earlier date, she conceded to the later date in light of the defense request for a three-day setting. *Sartain*, ¶ 7. Moore testified by affidavit in the postconviction proceeding concerning his reasoning for the request:

> I did not waive Defendant's speedy trial rights . . . . [T]he case was set for trial at the earliest possible time I felt was appropriate to be fully prepared and ready to challenge the State.

I was still working with my investigator at the time of the omnibus hearing. Not all interviews were completed at the time of the omnibus hearing . . . . My investigator and I were still working on pinning down an exact to the minute timeline. Additionally, I knew I would need some extra time to meet with the Defendant given that he was located at the Montana State Prison.

. . .

The victim in this case did not get interviewed until shortly before trial because he would not cooperate with my investigator and we had to work through the Victim Witness Advocates Office to get an interview. I certainly would not feel comfortable taking a case to trial when we had not been able to interview the victim. Finally, we had received some information in September 2008 on an individual who had been arrested in the same area as the Defendant. We were working on locating information and a photograph of this individual, and investigating the facts of that incident to see if we could use this as a Defense [sic] to the case. No other attorney and investigator, with our workload and with our resources, could have done anything better or faster than we did.

¶14 Moore filed a speedy trial motion to dismiss in January 2009 and a hearing was held in February 2009. Moore did not introduce letters Sartain had written to him, which referenced Sartain's concerns about speedy trial and other work he wanted Moore to undertake, or a motion to dismiss for lack of speedy trial that Sartain had personally drafted. The District Court thereafter denied the motion, and on direct appeal, Sartain challenged the denial. We addressed the issue on the merits, concluding the District Court had not erred. *Sartain*, ¶ 26. We agreed with the District Court's assessment of factor three, accused's response to the delay, weighing that factor against Sartain as part of the *Ariegwe*[1] analysis. *Sartain*, ¶ 20. Sartain contends the outcome would likely have been different had Moore introduced Sartain's letters and the self-prepared speedy trial

---

[1] *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P.3d 815.

motion he had provided to Moore, to demonstrate his lack of acquiescence in the delay of his trial.

¶15    We initially note that, although a part of Moore's file, these documents were not referenced by Sartain in his briefing on the direct appeal in support of his argument that he had not acquiesced in the delay.[2]  A possible explanation is that these items had not been introduced into the trial record, but it is further notable that Sartain also failed to reference these documents when he testified at the pre-appeal speedy trial hearing, despite the fact that an issue was being made of his acquiescence to the delay.  During cross examination, Sartain testified as follows:

> Q. And at that August of '08 Omnibus Hearing, trial was set for March '09, correct?
> A. That's correct.
> Q. And you received notice of that, correct?
> A. Yes, I did.
> Q. And when did you receive notice of that?
> A. I think it would have been at least a month after the Omnibus Hearing.
> Q. Okay. So around September of '08, is that fair to say?
> A. That is correct.
> Q. Okay. And yet no speedy trial motion was filed until January of '09, correct?
> A. That's correct.
> Q. All right. And so there's a six, seven-month gap in there? That's not correct . . . a five-month gap in there?
> A. Correct.

---

[2] Sartain has made no claim of ineffectiveness against his appellate counsel on this basis.

Q. From when you found out about the trial date and until a speedy trial motion was filed?

A. Correct.

. . .

Q. Okay. *So when the trial was set in March of '09 you didn't immediately file the speedy trial complaint --*

*A. No, I did not.*

*Q. -- or you didn't notify your defense? Okay . . .* [emphasis added]

At the close of testimony, the presiding judge returned to this point and asked Sartain again when he had learned of the trial setting. Sartain confirmed that he had learned of it in September 2008. Again, Sartain made no mention of his letters or motion.

¶16 Following the close of evidence, and in Sartain's presence, the prosecutor premised her speedy trial argument upon Sartain's testimony:

> . . . the Defendant himself found out about it in September and yet we didn't get the Speedy Trial Motion until January.
>
> So I mean the policy behind this, Your Honor, is that a defendant cannot ask for a later trial date and know about it and then come in after speedy [trial] is run and say "Well, hey, wait a minute, this is a speedy trial violation." They're just basically doing the end run around another conviction. Because, you know, they set themselves procedurally for a speedy trial issue, so they can't generate the problem and then claim it.
>
> . . .
>
> I mean the fundamental issue with this case is not the fact that he was on parole, it's the fact that he knew about this trial setting. The trial was set, he knew about it and we don't even have a motion filed until January. And so that takes—I mean the third element [of *Ariegwe*] that responds to the delay is something the Court should give considerable weight to. You can't ask for a trial setting to accommodate the Defendant

8

and have it set out past speedy trial, then come in and say there's been a speedy trial violation. It just—it is completely nonsensical

. . .

The Court: At what point does a Defendant have to assert that right?

[Prosecutor]: Your Honor, I would think—I mean it goes to the response to the delay. It's something for the Court to consider. But, you know, if I was sitting in prison and I found out that I was going to be sitting there for several months more and I objected to that, because I wanted to get my trial moving along, I mean you would do it right away. Five months is a long time . . . .

The Court: It's actually four months.

[Prosecutor]: It's a long time particularly under the circumstances that the Defendant was describing.

¶17 Despite having the opportunity to testify, being asked about the issue of acquiescence, and observing the argument and questions about his acquiescence, Sartain made no effort to offer the evidence of which he was fully aware and that he now views as critical to the outcome and thus essentially abandoned it. Consequently, this Court did not have the benefit of that evidence when we considered the merits of the speedy trial issue on direct appeal. Moreover, even if the blame for all of this could be shifted to counsel, our review of the record does not convince us the documents would likely have altered the result, had they been considered. Sartain's letters to Moore were dated in May 2008, before his initial appearance and before his March 2009 trial date was set by the court in August 2008. The time period cited by the District Court and this Court as establishing Sartain's acquiescence was the four month delay between September 2008, when he learned of the trial setting, and Moore's filing of a motion to dismiss for lack of

9

speedy trial in January 2009. *Sartain*, ¶¶ 19-20. Sartain has not demonstrated or even alleged that his letters to Moore and his motion were prepared in timely response to the setting of the trial date. While the documents establish that Sartain expressed an interest in the speedy trial issue at some point, they do not constitute proof sufficient to refute the District Court's determination that Sartain acquiesced in the delay during that critical period.[3] We thus affirm the District Court's rejection of the claim.

## B. Trial issues

¶18    Sartain contends that trial counsel failed to give an opening statement, failed to object several times, did not allow him to testify, did not adequately consult with him prior to trial, and failed to move for a new trial based on what Sartain terms "evidence tampering."

### i. Failing to give an opening statement

¶19    Sartain argues that his trial counsel's failure to give an opening statement prejudiced him, and counsel should have at least informed the jury about the presumption of innocence and the State's burden of proof. We have held that trial counsel's decision about whether to give an opening statement is "ordinarily a matter of trial tactics and strategy which will not form the basis for a claim of ineffective assistance of counsel." *Dawson v. State*, 2000 MT 219, ¶ 99, 301 Mont. 135, 10 P.3d 49 (citation omitted). Moore stated in his affidavit that his trial strategy was based on cross-examination of the

---

[3] The record copy of Sartain's self-prepared motion bears an electronic facsimile stamp date of January 7, 2009, the day before Moore filed his motion to dismiss, and an attached note from Sartain is dated January 5, 2009. There is no further evidence regarding the time of its preparation or its delivery to Moore.

State's witnesses and that he specifically chose not to give an opening statement because he did not want to "tip off" the State about his defense strategy or give the State any assistance in preparing witnesses for his cross-examination. Sartain has not demonstrated that Moore's strategy was unreasonable under the circumstances, and thus the claim fails to satisfy the first prong of *Strickland*. *Whitlow*, ¶ 15; *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

### ii. Objections

¶20 Sartain argues his trial attorney missed several opportunities to object, which were prejudicial. First, he claims counsel should have objected when the prosecutor referred to certain witnesses as "eyewitnesses" because the burglary victim, Hop, was the only person who actually saw the crime occurring and, therefore, was the only "eyewitness." Sartain argues his counsel should have objected when the prosecutor referred to other witnesses who merely observed Sartain during his flight as "eyewitnesses." Sartain fails to cite any authority that would support this theory. "A petitioner who argues that trial counsel's failure to object rendered counsel ineffective must show that counsel's trial objection would have been proper and that the court likely would have sustained the objection." *Foston v. State*, 2010 MT 281, ¶ 11, 358 Mont. 469, 245 P.3d 1103 (citing *Ford v. State*, 2005 MT 151, ¶ 7, 327 Mont. 378, 114 P.3d 244). We decline to address the issue further.

11

¶21     Secondly, during examination of the arresting officer, the prosecutor asked if the officer had any doubt that his testimony was the truth. Sartain argues his attorney should have objected to this question, although he offers no authority. Assuming *arguendo* that the question was improper, Sartain makes no showing of prejudice. The question and answer were very brief, and their impact on the outcome, if any, appears to be negligible.

¶22     Sartain next alleges that the prosecutor made improper remarks during his closing argument about, and mischaracterized the role of, the defense attorney. Sartain cites *McGuire v. State*, 677 P.2d 1060, 1063-64 (Nev. 1984), for the proposition that "it is not only improper to disparage defense counsel personally, but also to disparage legitimate defense tactics." During closing argument, the prosecutor said, "Casey Moore is a wonderful criminal defense attorney. I have the utmost respect for him. A criminal defense attorney's job, if it's anything, is to muddy the waters. Muddy the waters, create confusion, and he did a good job of that." In his affidavit, Moore stated that he did not consider this statement to be disparaging, and he made a tactical decision not to object to it. Instead, Moore responded to the comment in his own closing by saying "If my job is to muddy the waters, then it's the State's job to make my client look bad, to make him look guilty." We agree with the District Court's conclusion that "[t]here is nothing 'ineffective' about this trial strategy" and that the failure to object did not constitute ineffective assistance.

### iii. Failure to testify

¶23 Sartain contends that he wanted to testify at trial, but Moore did not give him the opportunity to do so. After the State rested its case, Sartain was asked if he wished to testify, to which he answered "[y]ou bet." Moore said to Sartain, "you can have a conversation with me about whether you actually want to [testify]," to which Sartain responded, "[y]eah, I think that would be fair." The court then instructed Sartain and Moore to discuss their strategy over the noon break. Moore advised the court that they would discuss it, and if Sartain chose not to testify, then the defense would rest. After coming back from the noon recess, the defense rested its case without Sartain testifying.

¶24 The District Court found Sartain's assertion that he was not allowed to testify lacked credibility because Sartain did not object when Moore rested the defense without Sartain testifying. Sartain has not demonstrated that the District Court's findings were clearly erroneous, and we affirm.

### iv. Consultation prior to trial

¶25 Sartain contends that Moore did not adequately consult with him prior to trial. Sartain claims he met with Moore only three times, that the meetings ranged in length from fifteen to thirty minutes, and that he had difficulty reaching Moore by phone. Sartain was incarcerated at Montana State Prison during the proceeding. Moore indicated he and his investigator met with Sartain at the Prison several times and also communicated by telephone and through letters. Moore indicated that Sartain's assessment of the length of the meetings was not true. Moore stated he would clear his

schedule for the entire day to travel to Deer Lodge to meet with Sartain, and the meetings were clearly longer than Sartain alleges. Although Sartain would no doubt have preferred to meet more often, this alone does not establish ineffective assistance. *See State v. Senn*, 244 Mont. 56, 59, 795 P.2d 973, 975 (1990) ("[d]efendant's allegation that his counsel did not meet with him as often as he would have preferred, does not establish his counsel's competence or incompetence in such a situation."). Without more, Sartain has failed to satisfy the first prong of *Strickland*.

### v. Evidence tampering

¶26    Sartain alleges a pry bar that was allegedly used in the crime was removed from the chain of custody and tampered with by police and that his trial counsel should have moved for a mistrial on this ground.[4] Moore countered that the transcript clearly explained that police merely took measurements from the pry bar and that no evidence tampering or chain of custody issues existed. The District Court concluded that a motion for mistrial would have been frivolous. "A petition requesting post-conviction relief must show, by a preponderance of the evidence, that the facts justify the relief." *Hamilton v. State*, 2010 MT 25, ¶ 10, 355 Mont. 133, 226 P.3d 588 (citing *Heath v. State*, 2009 MT 7, ¶ 16, 348 Mont. 361, 202 P.3d 118). A review of the record reveals there is no evidence supporting Sartain's contention that the pry bar was removed from evidence or that it had been tampered with. There is no indication from the testimony that the chain of custody was broken in order to take the measurements of the pry bar.

---

[4] The pry bar was found following a police execution of a "dog track" with a police dog, which led to the discovery of the pry bar and a footprint matching Sartain's shoes in a nearby alley.

¶27 None of the allegations set forth by Sartain pertaining to trial issues meet the criteria set forth in *Strickland* regarding ineffective assistance of counsel.

### C. Suppression Issues

¶28 Sartain argues Moore was deficient by failing to challenge the "show-up" identifications, his warrantless arrest, statements he made to officers after the arrest, and by failing to raise a potential *Brady*[5] violation.

¶29 After Sartain was apprehended by police on a Bozeman street, police transported him to the victim's house to determine if Hop could identify Sartain as the intruder. Police also took Sartain to another witness's house for possible identification. Although both witnesses indicated that Sartain matched the general descriptions they had given to police, neither was able to positively identify Sartain. Sartain argues that these "show-up" identifications violated his due process rights because they were impermissibly suggestive, and Moore's failure to challenge them constituted ineffective assistance.

¶30 Moore explained that, after researching the issue, he chose not to challenge the identifications because neither individual could positively identify Sartain, and he wanted to exploit that weakness during cross-examination. He believed drawing attention to the witnesses' inability to identify Sartian would be a stronger strategy than attempting to suppress that information and losing the opportunity to cross-examine the witnesses. At

---

[5] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). Under *Brady*, a prosecutor's failure to provide exculpatory evidence to a defendant violates the defendant's right to due process. *See State v. James*, 2010 MT 175, ¶ 32, 357 Mont. 193, 237 P.3d 672 (citing *State v. Johnson*, 2005 MT 318, ¶ 12, 329 Mont. 497, 125 P.3d 1096).

trial, Hop positively identified Sartain as the assailant, stating that he was certain it was Sartain who was in his house. Moore then challenged Hop's credibility because he could not identify Sartain at the scene shortly after the events took place. The District Court concluded Moore's actions fell within the broad range of competent legal assistance and did not constitute ineffective assistance. We agree.

¶31 Sartain next argues, rather incredibly, that Moore should have challenged his arrest for lack of probable cause. We agree with the District Court's conclusion that a motion challenging probable cause to arrest Sartain would have been frivolous because there was more than sufficient evidence to support the officer's determination to arrest Sartain. We therefore do not find it necessary to address Sartain's argument that the statements he made to officers after his arrest should have been suppressed based on an improper arrest.

¶32 Sartain alleges Moore improperly failed to raise a *Brady* violation. Hop initially stated he found nothing missing from his home but testified he later discovered a gold and diamond "gentleman's bracelet" was missing. Neither Sartain nor Moore was aware of the missing bracelet. Sartain asserts the State committed a *Brady* violation by failing to inform the defense about the missing bracelet and that Moore was ineffective by failing to raise the issue.

¶33 Moore believed there was not a basis for a *Brady* objection and instead used the new information about the bracelet during cross-examination. He noted he had never been provided with information about the bracelet, got Hop to admit that on his

16

restitution form Hop had indicated that nothing was missing, and obtained Hop's admission that police had not recovered a bracelet from Sartain upon his arrest shortly after Hop's apartment was broken into. Moore's approach was a tactical decision used to attack the victim's credibility during cross-examination, and his determination to not raise a *Brady* violation falls within a wide range of reasonable professional assistance and therefore does not meet the first prong of *Strickland*.

### D. Sartain's Sentence

¶34 Sartain claims his forty year sentence is in excess of the maximum penalty allowed under the statute and that Moore failed to challenge it. Under § 45-6-204(3), MCA, the maximum penalty for burglary is incarceration for a period of twenty years. However, Sartain was sentenced as persistent felony offender. Under § 46-18-501, MCA, an individual may be designated as a persistent felony offender by the sentencing court under certain criteria, which Sartain satisfied. Under § 46-18-502, MCA, "a persistent felony offender shall be imprisoned in the state prison for a term of not less than 5 years or more than 100 years." When one is sentenced as a persistent felony offender, this sentence replaces the underlying felony sentence that one would otherwise receive. *See State v. Johnson*, 2010 MT 288, ¶¶ 16-17, 359 Mont. 15, 245 P.3d 1113 (quoting *State v. DeWitt*, 2006 MT 302, ¶ 11, 334 Mont. 474, 149 P.3d 549; *State v. Gunderson*, 2010 MT 166, ¶ 54, 357 Mont. 142, 237 P.3d 74). It was well within the District Court's discretion to sentence Sartain to forty years at the Montana State Prison because of his designation as a persistent felony offender.

17

¶35 *2. Did the District Court err in dismissing Sartain's ineffective assistance of counsel claims against his appellate counsel?*

¶36 When evaluating claims of ineffective assistance of appellate counsel, we again look to the *Stickland* test. *Rogers*, ¶ 37. The defendant must show that appellate counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the defendant would have prevailed on appeal. *DuBray v. State*, 2008 MT 121, ¶ 31, 342 Mont. 520, 182 P.3d 753 (citing *Dawson*, ¶ 147).

¶37 Sartain argues Schwartz should have raised the alleged *Brady* violation and requested a new trial based on the prejudice caused by the prosecution's failure to provide the defense with information on the missing bracelet. In an affidavit obtained by the State in response to Sartain's petition, Schwartz stated that she respectfully disagreed that this constituted a *Brady* violation because there was no evidence that the failure to inform the defense was an intentional omission on the part of the prosecution, and in any event, the omission did not rise to the level of a *Brady* violation. The District Court held: "Raising this issue would have been frivolous because evidence of the victim's 'missing bracelet:' (1) was effectively used to impeach the victim's testimony; (2) was not material to the State's case; (3) was not 'exculpatory;' and (4) was not intentionally withheld by the State." Sartain has failed to prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the petitioner would have prevailed on appeal." *DuBray*, ¶ 31 (citing *Dawson*, ¶ 147).

18

¶38 Sartain also argues that Schwartz was ineffective for failing to raise the pry bar evidence tampering issue. As stated above, there was simply no evidence of "evidence tampering." Both trial counsel and appellate counsel chose not to raise the issue because, as the District Court correctly found, "[r]aising this issue would have been frivolous."

¶39 Finally, Sartain challenges Schwartz's failure to challenge the admissibility of the pry bar, a shoe print, and K-9 tracking evidence. Prior to trial, Moore filed a motion in limine, and the court conducted a hearing. Schwartz stated she reviewed the transcript and case law cited by the parties and also completed independent research on the admissibility of these items. After her review, she concluded that, although the issue had been preserved for appeal, she "did not believe that the admission of this evidence, limited as it had been by the trial court, would result in reversible error." Schwartz further stated that "[i]n my opinion, Sartain had more viable issues . . . I made the tactical decision to focus on what I believed were the stronger issues . . . ." Schwartz's approach fell within the range of reasonable profession assistance and did not constitute ineffective assistance of counsel. *Whitlow*, ¶ 15, *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

¶40 *3. Did the District Court abuse its discretion by failing to hold an evidentiary hearing on Sartain's petition?*

¶41 Sartain asserts the District Court erred by failing to conduct an evidentiary hearing "to develop a full and accurate record of [Sartain's] ineffective assistance of counsel claims, speedy trial violation and the prosecutorial misconduct, as these claims raise clear violations of Sartain's Fourth, Fifth, Sixth and Fourteenth Amendment rights."

19

¶42 Section 46-21-201, MCA, grants discretion in the manner district courts are to review petitions for postconviction relief. If a court determines that "the petition and the files and records of the case conclusively show that the petitioner is not entitled to relief," it can dismiss the proceedings without requiring a response by the State. If a court orders a response, it can, after reviewing the State's pleading, "dismiss the petition as a matter of law for failure to state a claim for relief or it may proceed to determine the issue." Section 46-21-201(1)(a); *Hamilton*, ¶ 10 (citations omitted). Here, the District Court dismissed the petition for failure to state a claim for relief.

¶43 "We review discretionary rulings in post-conviction relief proceedings, including rulings related to whether to hold an evidentiary hearing, for an abuse of discretion." *Hamilton*, ¶ 7 (citing *Beach v. State*, 2009 MT 398, ¶ 14, 353 Mont. 411, 220 P.3d 667). We have determined that none of Sartain's claims against either his trial or appellate counsel satisfied the standards for establishing ineffective assistance, and we further conclude that he has not demonstrated that resolution of any of his claims necessitated an evidentiary hearing. The District Court did not abuse its discretion.

¶44 Sartain "bore the burden to overcome the presumption that his counsel acted in a reasonable, professional manner." *Sellner v. State*, 2004 MT 205, ¶ 48, 322 Mont. 310, 95 P.3d 708. Sartain has failed to do so.

¶45 Affirmed.

/S/ JIM RICE

We concur:


/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER