FILED

March 22 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0815

DA 14-0815

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 66

GARY DUANE HEAVYGUN,

        Petitioner and Appellant,

  v.

STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDV-12-610
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Joseph P. Howard, Joseph P. Howard, P.C.; Great Falls, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General; Helena, Montana

            John W. Parker, Cascade County Attorney; Great Falls, Montana

Submitted on Briefs: February 3, 2016

Decided: March 22, 2016

Filed:

_____

Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Gary Duane Heavygun (Heavygun) was convicted of deliberate homicide, and other related felonies and misdemeanors. Heavygun appealed his convictions, which were affirmed by this Court in *State v. Heavygun*, 2011 MT 111, 360 Mont. 413, 253 P.3d 897 (*Heavygun I*). Heavygun filed a petition for postconviction relief and now appeals from an order entered by the Eighth Judicial District Court, Cascade County, denying him postconviction relief. We affirm.

¶2 On appeal, Heavygun asks whether he received ineffective assistance of counsel during his trial.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On January 25, 2009, Heavygun and Justin Wells (Wells) spent several hours drinking together at Heavygun's home. Heavygun and Wells had grown up together. Heavygun's wife, Wilma, from whom Heavygun was separated, was also at Heavygun's home intermittently, despite Wilma having an order of protection against Heavygun. Heavygun and Wells argued throughout the evening about whether Wells' cousin had molested Heavygun when he was a child.

¶4 After Wilma left, Heavygun walked over to her house. Wilma was home, but did not answer the door and, at around 8:51 p.m., called the police to report his presence. Heavygun left Wilma's house driving their Suburban, which could be started without a key. Heavygun drove in the opposite direction of his home and out of town. At about 8:57 p.m., Heavygun caused a traffic accident when he sped through a red light and

2

struck another vehicle. Accident witnesses and emergency responders noted that Heavygun was driving very fast, smelled of alcohol, and that he had blood on his hands. Heavygun admitted to a paramedic that he had been driving fast and was under the influence of alcohol. At the accident scene, Heavygun stated repeatedly that his brother[1] was dying on his porch. A witness obtained his home address and notified officers. Officers responded to Heavygun's home where they found Wells outside and unresponsive, with two stab wounds in his back. Wells died as a result of the stab wounds, one of which punctured his lung.

¶5 Heavygun was transported from the traffic accident scene to the hospital. Heavygun had a shallow cut on the inside of his right thumb, which testimony later revealed was an injury consistent with having stabbed someone, striking a bone, and the hand slipping off the knife's grip and onto its blade. A blood sample drawn on January 26, 2009, at 2:38 a.m. indicated Heavygun's blood alcohol content at that time was .07. Heavygun called his wife from the hospital and told her that he needed an attorney because he was "going to jail for a long time." Heavygun told officers at the hospital that he was a "bad man" and asked if he would be charged with a DUI. He then predicted that if he was charged with a DUI, he would be getting two felonies that night.

¶6 At trial, held in April 2010, Heavygun asserted the defense of justifiable use of force. He testified that Wells had a history of beating people up and that he and Wells had physically fought in the past. Heavygun testified that he wanted Wells to leave his

---

[1] Heavygun refers to Wells as his brother, the State refers to Wells as Heavygun's friend, and the District Court referred to Wells as Heavygun's cousin. We describe him as Wells.

house on the night of the incident because they were arguing. Heavygun testified that the two began physically fighting and that Wells grabbed a knife and came at him. He said he was able to get the knife from Wells and used it to stab Wells "[t]o get him away from me." According to Heavygun, Wells then agreed to leave and walked out of Heavygun's house, but Heavygun later found Wells on his front porch having trouble breathing. Heavygun testified that he told Wells he would go get help and then went to Wilma's house. However, evidence presented of a large blood stain located toward the bottom of the inside of Heavygun's front door contradicted Heavygun's assertion that Wells had walked out after being stabbed because it indicated that Wells had bled considerably from his wounds while still present inside Heavygun's home.

¶7 A jury found Heavygun guilty of deliberate homicide, felony DUI, violation of an order of protection, felony criminal endangerment, driving with a suspended or revoked license, and felony tampering with physical evidence. Heavygun was sentenced to life in prison for deliberate homicide and various concurrent sentences for the other offenses. Heavygun filed a motion for a new trial arguing ineffective assistance of counsel. The District Court denied his motion. Heavygun appealed his convictions. Heavygun raised two issues on appeal. He claimed his right to be present at all critical stages of his criminal proceeding was violated and that he had received ineffective assistance of counsel. This Court determined that his right to be present at all critical stages had not been violated, but dismissed his ineffective assistance claim without prejudice because it would be "better addressed in postconviction proceedings." *Heavygun I*, ¶ 23. On

August 13, 2012, Heavygun petitioned the District Court for postconviction relief, which was denied. Heavygun appeals.

## STANDARD OF REVIEW

¶8 The standard of review of a district court's denial of a petition for postconviction relief is whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *DeSchon v. State*, 2008 MT 380, ¶ 16, 347 Mont. 30, 197 P.3d 476 (citation omitted). Ineffective assistance of counsel claims constitute mixed questions of law and fact which are reviewed de novo. *DeSchon*, ¶ 16 (citation omitted).

## DISCUSSION

¶9 *Whether Heavygun received ineffective assistance of counsel during his trial.*

¶10 The right to effective assistance of counsel is encompassed by the right to counsel guaranteed by the Sixth Amendment to the United States Constitution and by Article II, Section 24 of the Montana Constitution. *DeSchon*, ¶ 18 (citation omitted). This Court adopted the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), to determine if an ineffective assistance of counsel claim is substantiated. *DeSchon*, ¶ 18 (citation omitted). To prevail under *Strickland*, the defendant must show that: 1) counsel's representation fell below an objective standard of reasonableness; and 2) counsel's deficient performance prejudiced the defense. *Sartain v. State*, 2012 MT 164, ¶ 11, 365 Mont. 483, 285 P.3d 407 (citations omitted). If the defendant makes an insufficient showing under either prong, the other prong need not be addressed. *Sartain*, ¶ 11 (citations omitted).

5

¶11 Under the first prong of the test, the deficiency prong, counsel's performance should be evaluated without the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. There is a strong presumption that counsel's actions are within the broad range of reasonable professional assistance because "[t]here are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. Under the second prong of the test, the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

¶12 Heavygun argues he received ineffective assistance of counsel because: 1) he was represented by more than one attorney; 2) his attorney failed to investigate and present evidence of Wells' history of violence; and 3) his attorney failed to adequately prepare him to testify. Heavygun also argues the cumulative effect of his claims caused him prejudice and warrants reversal of his conviction. We will address each argument in turn.

*A. Representation by multiple attorneys*

¶13 Heavygun argues he received ineffective assistance of counsel when he was represented by six different attorneys from the Office of the State Public Defender (OPD). Heavygun was represented by three attorneys of record; Carl Jensen (Jensen)

6

from February 12 until October 9, 2009, when Jensen left OPD for private practice; Matthew McKittrick (McKittrick) from October 9 until October 29, 2009; and Scott Spencer (Spencer) from October 29 until the conclusion of Heavygun's trial. Three additional attorneys also appeared on Heavygun's behalf. Melissa Edwards and Jeff Olson each appeared once, in place of the attorney of record, at a status hearing. Jennifer Streano, who acted as Spencer's co-counsel, appeared at one status hearing and at one other hearing. Heavygun argues this "revolving door of attorneys" prohibited the formation of an attorney-client relationship, demoralized him, and made him feel like he was "being processed by the system." Heavygun asserts that his representation violated OPD's own standard guidelines.

¶14 The OPD's standard guidelines recognize that continuous and uninterrupted representation by one attorney is the most effective method of representation and that even if an assigned public defender leaves OPD's employment, the defender can be directed to continue representing his or her current clients. Section III(3) *Standards for Counsel Representing Individuals Pursuant to the Montana Public Defender Act*, (Oct. 2009) (OPD Standard(s)). Heavygun argues OPD's failure to follow OPD Standards and retain Jensen after he left OPD, "fell below an objective standard of reasonableness" and caused him prejudice. Although the OPD Standards may be relevant to a judicial evaluation of counsel's performance, they are explicitly "not intended to be used as criteria for the judicial evaluation of alleged misconduct of counsel to determine the effectiveness of representation." Section I(2) *OPD Standards*.

7

¶15 As the District Court correctly noted, these guidelines are not the "sole measure of whether a public defender has fallen below the standard of care." Six attorneys appeared on Heavygun's behalf and three were attorneys of record; however, Heavygun was primarily represented by two: Jensen and Spencer. Jensen initially undertook Heavygun's representation, but left OPD's employment before Heavygun's trial. Jensen could have been directed to continue representing Heavygun under OPD guidelines, but the guidelines did not require his continuation. Jensen was starting his own private practice and, according to McKittrick, Jensen continuing to represent Heavygun was not believed to be in Heavygun's best interests. Instead, Heavygun's representation was reassigned. McKittrick undertook Heavygun's representation for a brief, twenty-day period between Jensen and Spencer. The record indicates McKittrick acted as attorney of record for such a brief period because his own demanding workload precluded him from providing Heavygun appropriate long-term representation. Additionally, McKittrick planned to assign Heavygun's representation to "the recently formed Major Crimes Unit of the [OPD], which was staffed by [OPD] attorneys with lower caseloads for the purpose of representing clients charged with very serious crimes." Spencer, an attorney in the Major Crimes Unit, was then assigned to represent Heavygun in October 2009 and did so until Heavygun's trial concluded in April 2010. The other three attorneys filled in for the attorney of record at four hearings, three status hearings and one arraignment hearing, which was rescheduled. The record shows it is "common practice" for defense attorneys

8

to appear on each other's behalf, when asked to do so because of illness or scheduling conflicts, and especially for more routine matters, such as status hearings.

¶16   Heavygun focuses on the number of counsel involved in his defense and speculates "that if Heavygun received continuous representation he would have had a better understanding of trial strategy and the risks of failing to plead to some of the charges."  Allowing alternate counsel to appear at hearings when the attorney of record could not appear was appropriate and substituting the attorney of record was necessary. Indeed, it would not have been preferable to leave Heavygun without counsel at these hearings when stand-in counsel could competently represent Heavygun's interests.  These actions were not unreasonable and did not render counsel's representation deficient.  We conclude that Heavygun's claim that he was unreasonably represented by multiple attorneys is inaccurate in that Jensen and Spencer were his primary attorneys of record. Furthermore, the allowance of stand-in counsel for hearings did not constitute deficient performance or otherwise fall below an objective standard of reasonableness sufficient to establish the deficiency prong of *Strickland*.  Thus, respecting his claim that he was denied effective assistance of counsel because he was represented by multiple attorneys, the District Court was correct in denying Heavygun's petition for postconviction relief.

   B. *Failure to investigate*

¶17   Heavygun argues Spencer was ineffective in failing to investigate and present evidence of Wells' history of violence, which was the crux of his justifiable use of force

defense. Heavygun argues that discovery identified several witnesses to Wells' violence and that Spencer failed to investigate and present their testimony at trial.

¶18 Defense counsel has a duty to make reasonable investigations or make a reasonable decision that further investigation is not necessary. *DeSchon*, ¶ 23 (citation omitted). Evidence of a victim's character is admissible when it relates to the reasonableness of force used by the accused. M. R. Evid. 405(b); *State v. Sattler*, 1998 MT 57, ¶ 44, 288 Mont. 79, 956 P.2d 54. Admissible character evidence of a victim is limited to what the defendant knew at the time he used force against the victim, and it is also required that the defendant show this knowledge led him to use the level of force he did. *DeSchon*, ¶ 24 (citations omitted). "When defense counsel is accused of failing to investigate adequately, the focus is on whether the information obtained from such an investigation would have produced a different result." *DeSchon*, ¶ 23 (citation omitted).

¶19 Investigation into a victim's history of violence is relevant to the extent it may help to establish the accused knew about the victim's violent history at the time of the incident. In *DeSchon*, DeSchon claimed ineffective assistance of counsel based on his counsel's failure to adequately investigate his victim's violent past. *DeSchon*, ¶ 21. DeSchon argued that, under M. R. Evid. 404 and 405, he was allowed to introduce an unlimited amount of character evidence concerning the victim. *DeSchon*, ¶ 22. DeSchon argued that if his attorney had conducted an adequate investigation, counsel would have learned of DeSchon's family members who knew of, and could have testified to, specific instances of the victim's violent history. *DeSchon*, ¶ 22. However, this Court concluded

that, because there was no evidence DeSchon was aware of these incidents, the evidence would have been inadmissible. *DeSchon*, ¶ 25. We held that "trial counsel's decision to limit their investigation into [the victim's] violent past to what their client knew at the time of the stabbing did not fall below an objective standard of reasonableness because it was soundly based in Montana law." *DeSchon*, ¶ 26.

¶20 The record does not support Heavygun's claim that counsel failed to adequately investigate Wells' history of violence. At trial, Heavygun testified that Wells sometimes had "a shiner or his knuckle would be all skinned up," and he would brag that he had beaten somebody up. He testified that Wells appeared angry the day of their altercation and that he wanted Wells to leave his home. Heavygun also testified that a year before their argument, Wells and Heavygun had physically fought, but that it had been broken up and that Wells wanted to finish the fight. Critically, Heavygun testified during his direct examination that Wells' prior violence was not on his mind when Wells allegedly grabbed a knife and came toward him. As Wells' history of violence was not a factor in Heavygun's use of deadly force, any further investigation into Wells' history could only have led to inadmissible evidence.

¶21 Pursuant to the prejudice prong of the *Strickland* test, the focus is on whether the result would have been different if Spencer had conducted further investigation or presented additional testimony. Heavygun does not assert specifically who Spencer failed to interview or what their testimony may have been. He speculates generally that witnesses could be found to testify to Wells' violent history; however, he testified that

11

Wells' violent history was not on his mind when he stabbed Wells. No matter what other witnesses may have testified to, Heavygun admitted he was not thinking of Wells' prior violence, which foreclosed his opportunity to use justifiable use of force as a defense.

¶22 Additionally, Heavygun argues that, without any other witnesses, he was the only one to testify about Wells' history of and propensity toward violence and that the State used the lack of other witnesses to attack his credibility. However, even if Heavygun had presented additional witness testimony concerning Wells' history of violence, the State's argument—that Heavygun did not stab Wells in self-defense—made Wells' violent history largely tangential. In its closing argument, the State asked the jurors to focus on the evidence that indicated Wells was not stabbed in self-defense; including that Heavygun disarmed Wells, by taking the knife away from Wells, before stabbing him. The evidence the State urged the jurors to focus on stressed that Heavygun was the aggressor at the time of the stabbing and it was no longer reasonable or necessary for him to use lethal force to defend himself against Wells. The State's argument demonstrates that Heavygun did not suffer prejudice because of his counsel's failure to present additional witnesses to Wells' history of violence.

¶23 Finally, Heavygun argues that Spencer inadequately prepared him for trial by specifically advising Heavygun to avoid testifying that Wells' history of violence was on his mind during the stabbing. This contention is simply not credible given the requirements for successfully presenting a defense of justifiable use of force and for the further reasons set forth below. In any event, Spencer's alleged failure to investigate

12

could not have prejudiced Heavygun's defense because Heavygun's admission that Wells' violent history was not a consideration in Heavygun's stabbing of Wells completely undermined his defense of justifiable use of force. Furthermore, Heavygun was still able to testify to what he knew about Wells' history of violence. We conclude, under the prejudice prong of *Strickland*, that any alleged failure of Spencer to further investigate Wells' history of violence did not prejudice Heavygun in his defense and that Heavygun's claim of ineffective assistance of counsel must fail. The District Court correctly concluded Heavygun did not receive ineffective assistance of counsel because of his counsel's failure to investigate and properly denied him postconviction relief on this ground.

C. *Inadequate preparation*

¶24 Heavygun argues his representation was ineffective because he was not adequately prepared to testify on his own behalf. Heavygun's testimony was critical to his defense of justifiable use of force. Spencer's failure to meaningfully prepare him to testify, Heavygun argues, led to testifying being a "difficult experience" for him and Heavygun accidentally undermining his own defense by testifying that Wells' history of violence was not on his mind when he stabbed Wells.

¶25 "That a person who happens to be a lawyer is present at trial alongside the accused . . . is not enough to satisfy the constitutional command" of effective assistance of counsel. *Strickland*, 466 U.S. at 685, 104 S. Ct. at 2063. Counsel must act and prepare as a reasonable attorney would under prevailing professional norms. *Strickland*,

13

466 U.S. at 688, 104 S. Ct. at 2065. Counsel has an "overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065 (citation omitted). Under *Strickland*, Spencer must have prepared Heavygun to testify as a reasonable attorney would have.

¶26 In *Riggs v. State*, 2011 MT 239, 362 Mont. 140, 264 P.3d 693, Riggs petitioned for postconviction relief from his convictions of various crimes involving sexual abuse. *Riggs*, ¶¶ 2-3. Riggs argued he received ineffective assistance of counsel because his attorney failed to prepare him to testify. *Riggs*, ¶ 29. There, evidence showed Riggs' attorney met with Riggs in person four or five times and spent at least twelve hours preparing Riggs to testify. *Riggs*, ¶ 32. We noted that Riggs did not explain what his attorney should have done, or how further preparation would have resulted in a different outcome at trial. *Riggs*, ¶ 32. We concluded that Riggs had failed to prove the prejudice prong of *Strickland*. *Riggs*, ¶ 33.

¶27 At the time Spencer represented Heavygun, Spencer had 30 years of experience practicing criminal law. Spencer met with Heavygun in person "at least 7 times" prior to trial. Each time, Spencer would ask Heavygun to recount the events of January 25, 2009, from beginning to end. Spencer found that Heavygun's recitation of the events changed over time. Spencer communicated with Heavygun by telephone and by letters indicating the status of Heavygun's case, updating him on Spencer's investigation, and notifying

14

him of various issues and trial strategies. For example, the record shows that in the letters, Spencer discussed and explained relevant law to Heavygun and the wisdom of advancing a justifiable use of force defense versus an accident defense and the wisdom of revealing Heavygun was on probation and wearing an ankle bracelet at the time of the incident. Spencer advised Heavygun that it was ultimately Heavygun's decision what defense to advance and whether to reveal he was on probation. Spencer estimated that he and other attorney's from the OPD had spent at least 340 hours preparing Heavygun's case for trial.

¶28 Spencer used the notes he took from his numerous meetings with Heavygun to prepare an outline of the testimony he expected Heavygun to give at trial. Spencer provided this outline to Heavygun one month prior to his trial so that Heavygun could review it and prepare to be questioned about the facts contained within it. Before trial began, Heavygun went through his testimony with Spencer using the outline Spencer had prepared. Spencer made minor alterations to the outline based on Heavygun's responses during their preparation. At trial, Heavygun's testimony was inconsistent with what he had indicated to Spencer during their preparation. For example, Heavygun admitted he was on probation, even though he and Spencer had discussed whether to do that and Heavygun had decided he would not reveal it in his testimony. Heavygun's testimony also revealed he was not thinking about Wells' history of violence during the incident and made it seem more like an accident. Spencer had explained to Heavygun that his testimony about Wells' violent past, Wells' very angry demeanor that night, Heavygun's

15

resulting fear, and the previously unfinished fight between the two were "the key to getting the jury to find that you acted in self-defense."

¶29 Heavygun generally claims he was not sufficiently prepared to testify; however, as in *Riggs*, he does not explain what Spencer should have done or how further preparation would have resulted in a different outcome at trial. Conversely, there is ample evidence that Spencer's preparation of Heavygun for trial was extensive. Heavygun has thus failed to demonstrate that Spencer's preparation of Heavygun for trial was deficient or unreasonable. Additionally, evidence shows Spencer's attempts to prepare Heavygun to testify were undermined by Heavygun himself when, for instance, he changed his theory of defense by describing his actions as accidental and by admitting he was on probation. Based upon this record, we conclude that Spencer's preparation of Heavygun for trial was not deficient and did not fall below an objective standard of reasonableness under the deficiency prong of *Strickland*. The District Court correctly denied Heavygun's petition for postconviction relief on this ground.

## CONCLUSION

¶30 Heavygun has failed to establish that he received ineffective assistance of counsel. Because we find no ineffective assistance of counsel on Heavygun's individual claims, there can be no cumulative error.

¶31 Affirmed.

/S/ LAURIE McKINNON

16

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE