FILED

11/01/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0431

DA 20-0431

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 221N

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

HEATHER ARLETA CALLANTINE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                  In and For the County of Missoula, Cause No. DC 19-339
                  Honorable Jason Troy Marks, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          L. Amille Swanson, Amelia Law, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Michael P. Dougherty,
          Assistant Attorney General, Helena, Montana

          Kirsten H. Pabst, Missoula County Attorney, Mac Bloom, Deputy County
          Attorney, Missoula, Montana

Submitted on Briefs:  June 8, 2022

Decided:  November 1, 2022

Filed:

_____
                         Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and is not precedent. The case title, cause number, and disposition shall be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Heather A. Callantine appeals her July 2020 conviction for felony theft in the Montana Fourth Judicial District Court, Missoula County. We affirm.

¶3 In 1999, the United States Social Security Administration (SSA) designated Callantine as the representative payee of supplemental social security income (SSI) benefits payable to and for the benefit of her minor daughter, A.C. Incident to the initial SSI application, SSA advised Callantine of her legal duty to report any triggering event regarding her eligibility as A.C.'s payee, such as changes in A.C.'s custodial or living arrangements. Over the next 17 years, SSA annually gave Callantine written notice of her continuing duty to report any triggering event pertinent to her SSI payee eligibility. SSA also gave her similar notices over the years incident to periodic SSI eligibility reviews.

¶4 In October 2016, however, A.C.'s grandfather applied to SSA to become her new SSI payee. SSA thus discovered that Callantine had failed to report that A.C. had not been in her custody or care since August 2015, and that she had therefore since been ineligible to continue as A.C.'s payee. When later confronted, Callantine admitted that she knowingly failed to report the change in A.C.'s status because she needed the money for

2

her own purposes. SSA determined that she misappropriated $7,023.66 in SSI benefits. In June 2019, the State charged her with felony theft and misdemeanor false swearing.

¶5    In November 2019, prior to her upcoming December 2019 trial, Callantine submitted a complaint-based request to the Montana Office of Public Defender (OPD) for appointment of new counsel. The written complaint is not of record and the only evidentiary indication of its substance is her former counsel's March 2020 affidavit assertion that she "filed a complaint against me . . . stating she wanted new counsel because I did not know anything about the [SSA]."[1] However, counsel further explained in his March 2020 affidavit that, in addition to various earlier meetings and communications with Callantine, he: (1) reviewed all State-disclosed discovery materials on August 2, 2019; (2) met with Callantine on August 5th "to review the discovery, . . . omnibus form, and [] prepare for [her] [August 6th] Omnibus hearing"; (3) consulted with an SSA official regarding pertinent restrictions on SSI payee expenditures; (4) interviewed the two involved SSA investigators regarding their referral for criminal charges; and (5) then communicated to Callantine what he learned from his SSA inquiries.[2] Counsel's affidavit further noted that, following her initial unsupported assertion to him that SSA had

---

[1] Callantine's former counsel similarly characterized the complaint in his testimony at the May 2020 evidentiary hearing on Callantine's motion to withdraw her guilty plea.

[2] The March 2020 affidavit was responsive to a District Court order requested by the State pursuant to *Marble v. State*, 2007 MT 98, ¶¶ 2-4, 337 Mont. 99, 169 P.3d 1148, and *In re Gillham*, 216 Mont. 279, 280-82, 704 P.2d 1019, 1020-21 (1985), to compel former counsel to respond to the allegations of ineffective assistance of counsel made in support of Callantine's February 2020 motion for leave to withdraw her guilty plea.

authorized her to use her daughter's SSI benefits to buy a car, Callantine later asserted that "she used some of the SSI money to remodel a room for her daughter in a recently purchased trailer." But, when questioned as to whether her significant other would testify to corroborate that assertion, Callantine replied that "[s]he did not want [counsel] to speak to him about this." Counsel further asserted that he advised Callantine that the SSA advised him that SSI regulations authorize payee expenditure of SSI funds "to purchase a vehicle or to pay household expenses" only if the SSI beneficiary is "specifically living in the [payee's] home."

¶6     Because Callantine ultimately "communicated to [him] that she just wanted the chance to pay back the money," counsel endeavored to reach a plea agreement with the State under which she would plead guilty to felony theft in return for a State recommendation for a three-year deferred imposition of sentence conditioned on pay-back of the misappropriated SSI funds. Counsel's affidavit stated that, after successfully negotiating such an agreement, he met with Callantine on November 29, 2019, "to discuss whether she wanted to go to trial or to accept the State's [plea agreement] offer." He asserted that, upon discussion and his recommendation, Callantine ultimately chose to accept the State's plea offer and signed the proposed plea agreement and accompanying written acknowledgment and waiver of rights.

¶7     The typewritten acknowledgment and waiver document included, *inter alia*, specification of the originally charged offenses and corresponding maximum penalties, an itemized description and acknowledgment of the consequences of a guilty plea,

specification of the terms and consequences of the plea agreement, an itemized acknowledgment and waiver of specified trial rights, and Callantine's handwritten admission that she was guilty of felony theft because "I used my daughter's S.S. money for personal use." The written acknowledgment and waiver further asserted that, "I have had sufficient time to consult with my attorney" and we "have discussed the merits of my case." Callantine personally initialed each of 28 different typewritten statements in the document and then signed at the bottom over the signed type-written certification of her counsel as to her complete reading and understanding of her rights, the terms and consequences of the agreement, and her accompanying written acknowledgment and waiver of rights.

¶8 At hearing on December 2, 2019, Callantine appeared with counsel to change her plea in accordance with the plea agreement and her accompanying written acknowledgment and waiver of rights. After the District Court and defense counsel conducted a similarly comprehensive change of plea colloquy with her, the court accepted her change of plea to guilty on the felony theft charge, dismissed the accompanying misdemeanor charge, and vacated the upcoming jury trial in advance of sentencing. Neither Callantine, nor counsel, mentioned her prior OPD complaint against counsel.

¶9 At sentencing on January 28, 2020, Callantine appeared with counsel who advised that she wanted to withdraw her guilty plea. The minute entry on the hearing does not indicate the asserted justification for the request, if any, and there is no transcript of the hearing on appeal. In response, the court vacated the sentencing hearing and ordered

5

briefing on Callantine's motion to withdraw her guilty plea. OPD subsequently assigned new counsel who then filed a written plea withdrawal motion, supported by a February 2020 affidavit from Callantine, which asserted that she did not understand the process and had received ineffective assistance of counsel (IAC) based on former counsel's failure to spend sufficient time with her and failure to "go over" or "provide" the State-disclosed discovery materials to her prior to her change of plea.[3] The motion asserted that "Callantine is adamant that she would not have pled guilty," and would have instead gone to trial, "if she [could have] reviewed or discussed the State's evidence with her former counsel and [then] had sufficient time to discuss the case and the legal process with [him]." The State opposed the motion based on the underlying record of proceedings and former counsel's March 2020 *Gillham* affidavit.

¶10 At the May 2020 motion hearing, Callantine appeared with new counsel, but did not testify or proffer any other additional evidence in support of her motion. The State presented supplemental testimony from her former counsel under the previously issued *Gillham* order. In essence, consistent with his prior affidavit testimony, he testified, *inter alia*, that he: (1) timely reviewed all State-disclosed discovery in this case; (2) thoroughly discussed with Callantine prior to her change of plea all discovery materials received from the State; (3) as a matter of standard practice did not provide clients copies of all State

---

[3] The precise rationale for the OPD reassignment is not of record here. At the May 2020 motion hearing, Callantine's original public defender testified that, to his knowledge, her November 2019 complaint remained unresolved at OPD.

6

discovery materials except as requested by a client in a particular case; (4) thoroughly discussed with Callantine prior to her change of plea the relative "strengths and weaknesses of the case"; and (5) had no reason to suspect that she was not knowingly, voluntarily, and intelligently changing her plea. Counsel testified further that Callantine at no time prior to her change of plea requested a more detailed explanation of, the opportunity to personally examine, or copies of the State-disclosed discovery materials. He similarly testified that she at no time stated or otherwise gave any indication that she did not understand the legal process, her rights, the initialed statements in her written acknowledgment and waiver of rights, or the nature of the State's evidence against her. He testified that "[s]he just basically . . . wanted time to pay this off." In response to court inquiry as to whether anything in the State-disclosed discovery "would have provided [Callantine] a viable defense at trial," new counsel answered, "I have no answer for that." The District Court denied the motion for plea withdrawal and subsequently deferred imposition of sentence for three years as recommended by the plea agreement. Callantine timely appeals.

¶11    On good cause shown, trial courts may allow an accused to withdraw a guilty plea at any time. Section 46-16-105(2), MCA. As a waiver of fundamental constitutional trial rights, a guilty plea is valid only if made knowingly, voluntarily, and intelligently with sufficient awareness of all relevant circumstances, any alternative courses of action open to the accused, and the likely consequences of the change of plea. *State v. Radi*, 250 Mont. 155, 159, 818 P.2d 1203, 1206 (1991) (citing *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970)); *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970).

7

Whether "good cause" exists for withdrawal of a guilty plea under § 46-16-105(2), MCA, thus involves consideration of an array of case-specific factors under the totality of circumstances. *State v. McFarlane*, 2008 MT 18, ¶ 17, 341 Mont. 166, 176 P.3d 1057. Relevant factors include, *inter alia*, the accused's ability to soberly comprehend the relevant circumstances and direct consequences of the plea including the actual value of any commitments to the accused from the court, prosecutor, or defense counsel, the adequacy of the change of plea colloquy, whether the accused received effective assistance of counsel, and whether the plea was induced by any threat, misrepresentation, or improper promise, inducement, or influence. *State v. Terronez*, 2017 MT 296, ¶¶ 27-28, 389 Mont. 421, 406 P.3d 947 (internal citations omitted); *State v. Usrey*, 2009 MT 227, ¶ 17, 351 Mont. 341, 212 P.3d 279 (internal citations omitted); *Brady*, 397 U.S. at 755, 90 S. Ct. at 1472. This searching inquiry necessarily includes consideration, *inter alia*, of the state of mind and subjective impressions of the accused at the time of the plea, but based on the objective record facts and circumstances rather than unsupported, after-the-fact assertions. *State v. Humphrey*, 2008 MT 328, ¶¶ 22-23, 346 Mont. 150, 194 P.3d 643 (internal citations omitted). An accused's subsequent assertions regarding his or her subjective state of mind or impressions at the time of a change of plea are thus sufficient for subsequent withdrawal of the plea only if the asserted state of mind or subjective impressions are both supported by substantial objective evidence of record, and they are objectively reasonable under the record circumstances. *Humphrey*, ¶ 23 (internal citations omitted); *accord State v. Burns*, 2012 MT 97, ¶ 15, 365 Mont. 27, 278 P.3d 452 (citing *Humphrey*). Under

8

§ 46-16-105(2), MCA, the accused has the burden of demonstrating that a challenged guilty plea was not knowing, voluntary, or intelligent at the time. *Terronez*, ¶ 27; *Humphrey*, ¶ 23 (internal citation omitted).

¶12 Moreover, while IAC may be, depending on the circumstances, a basis upon which to find and conclude that a change of plea was not knowing, voluntary, or intelligent, the challenged performance of counsel is constitutionally ineffective only if both deficient and prejudicial to the accused. *State v. Herrman*, 2003 MT 149, ¶ 17, 316 Mont. 198, 70 P.3d 738; *Strickland v. Washington*, 466 U.S. 668, 685-87, 104 S. Ct. 2052, 2063-64 (1984). The performance of counsel is presumed constitutionally effective and the claimant thus has the burden of overcoming the presumption by making an affirmative showing that the challenged performance "fell below an objective standard of reasonableness measured [by] prevailing professional norms" under the totality of the circumstances. *Whitlow v. State*, 2008 MT 140, ¶¶ 20-21, 343 Mont. 90, 183 P.3d 861; *Strickland*, 466 U.S. at 688-89, 104 S. Ct. at 2064-65. The fact that counsel failed to take an available measure or action is generally insufficient alone to establish that the subject performance was deficient. *State v. Mahoney*, 264 Mont. 89, 101-02, 870 P.2d 65, 73 (1994). An IAC claimant also has the further burden of showing that the alleged deficient performance was prejudicial, i.e., that it is reasonably probable that a different outcome would have occurred but for the deficient performance. *Ariegwe v. State*, 2012 MT 166, ¶¶ 15-16, 365 Mont. 505, 285 P.3d 424 (internal citations omitted); *Sartain v. State*, 2012 MT 164, ¶¶ 9, 11, 365 Mont. 483, 285 P.3d 407 (internal citations omitted); *Heath v. State*, 2009 MT 7, ¶ 17, 348 Mont. 361, 202

9

P.3d 118 (internal citations omitted); *Whitlow*, ¶¶ 10-13 (internal citations omitted); *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

¶13    Here, other than after-the-fact assertions regarding her subjective state of mind and understanding prior to changing her plea and counsel's failure to unilaterally provide her copies of all State-disclosed discovery materials, Callantine has neither presented, nor pointed to, any substantial objective evidence of record supporting her claims that she did not understand the legal process, her rights, the nature of the State's evidence against her, or her alternative option of going to trial to either counter or test the sufficiency of the State's evidence.  Nor has she demonstrated either that her now-asserted state of mind and/or subjective perceptions at the time of her change of plea were objectively reasonable under the circumstances, or that her failure to receive personal copies of all State-disclosed discovery materials before her change of plea precluded her from identifying a viable defense option or other consideration that would have likely caused her to maintain her not guilty plea.  Further belying Callantine's assertions of lack of understanding of the legal process, her rights, the consequences of a change of plea, and her alternative trial option are the very plain, unambiguous, and comprehensive initialed statements in her written acknowledgment and waiver of rights, the questions posed in her record change of plea colloquy, her correspondingly clear and unequivocal answers thereto, and the corroborating affidavit and hearing testimony of her prior counsel.  As to IAC, Callantine has made no record evidentiary showing sufficient to satisfy either element of an IAC claim regarding the amount of time counsel spent communicating with her, the quality or

10

completeness of his advice, his failure to unilaterally provide her copies of all State discovery prior to her change of plea, or otherwise. We hold that the District Court correctly concluded in essence that Callantine's change of plea was knowing, voluntary, and intelligent, and that she thus failed to demonstrate good cause for withdrawal of her guilty plea under § 46-16-105(2), MCA.

¶14 We decide this case by memorandum opinion pursuant to our Internal Operating Rules. It shall not be cited and does not serve as precedent. Affirmed.

/S/ DIRK M. SANDEFUR

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE